746 So.2d 799 (1999)
STATE of Louisiana
v.
Darryl K. WEBSTER.
No. 98-KA-0807.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1999.
*800 Harry F. Connick, District Attorney of Orleans Parish, Holli Herrle-Castillo, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MOON LANDRIEU, Judge MICHAEL E. KIRBY.
LANDRIEU, Judge.
Defendant, Darryl K. Webster, was charged by bill of information with purse snatching, a violation of La. R.S. 14:65.1. A six-member jury found him guilty as charged. The State filed a multiple bill, and Webster pleaded guilty to the multiple bill after having been fully advised of the State's burden of proof and of his right to confront and cross-examine witnesses against him, his right to call witnesses in his own behalf, his right to appeal, his right to remain silent, his rights against self-incrimination and his right not to testify should he have to go to trial. The trial court found Webster to be a third felony offender and sentenced him under La. R.S. 15:529.1(A)(1)(b)(ii) to life imprisonment without benefit of probation or suspension of sentence. The trial court subsequently denied defendant's motion to reconsider the sentence. The defendant now appeals.
At trial, Debra Kulik of Rockville, Maryland, testified that she attended a conference in New Orleans in May of 1997. On May 19th, she and several colleagues had dinner at the Napoleon House and then walked to Café Du Monde for beignets. About 10:20 p.m., Ms. Kulik and two colleagues walked to St. Peter Street where they stopped near a store to speak with two people they knew from the conference. Ms. Kulik was standing with her left shoulder toward the street; her purse was strapped to her left shoulder. She glanced over her shoulder and noted a man coming toward her. She described him as a clean-shaven, thin, wiry, African-American man. As he got near her, he reached out and pulled her purse from her shoulder. Ms. Kulik screamed, "Stop him. He has my purse." One of her companions ran *801 after the man and caught him. Ms. Kulik saw her purse fall and retrieved it. The man was held by a police officer working an off-duty detail at the Preservation Hall Jazz Club. Ms. Kulik identified the man on the ground as the man who took her purse.
Richard Merrin of Washington, D.C., also attending the conference in New Orleans, was in the French Quarter with Ms. Kulik. Mr. Merrin was standing in the street when Ms. Kulik's purse was taken. Mr. Merrin began chasing the man and grabbed him by his jacket. The man stumbled and dropped the purse, and when Mr. Merrin let go of him, the man began running again.
Ms. Sherry Bankoff of Farmington Hills, Michigan, who attended the conference with Ms. Kulik and Mr. Merrin, was also walking on St. Peter Street after dinner on May 19th. Ms. Bankoff saw the man approach their group and pull Ms. Kulik's purse from her shoulder. Ms. Bankoff lost sight of the man at that point, but she saw him a few moments later when he was being held down by two bouncers from Pat O'Brien's and an off-duty police officer.
Detective Glen Madison was working off-duty at Preservation Hall on May 19th when he heard a woman scream. He looked in her direction and saw a man running with something in his hand. The man paused, and the next time the detective saw him, he did not have the object in his hand. The detective, assuming the man had taken a purse, planned to stop him as he got near Preservation Hall; however, the bouncers at Pat O'Brien's stopped him first. The man struggled with them, but after Detective Madison identified himself as a police officer, the man stopped struggling. The detective arrested him.
There is an error patent in the sentence under La. R.S. 15:529.1(A)(1)(b)(ii). Under that statute, the life sentence should have been without benefit of parole. The sentence is therefore illegally lenient. However, an error favorable to the defendant that is not raised by the State on appeal may not be corrected. State v. Fraser, 484 So.2d 122 (La.1986).
In a single assignment of error, the defendant argues that the sentence of life imprisonment is excessive. While acknowledging that the life sentence imposed for this third offender under the habitual offender law is mandatory, the defendant contends that the mandatory sentences are excessive as applied to certain defendants.
If the punishment mandated by La.Rev.Stat. 15:529.1 is constitutionally excessive, the trial court has the option of reducing the sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, amounts to nothing more than the purposeless infliction of pain and suffering, and is grossly out of proportion to the severity of the crime. Id. at 1280; State v. Lobato, 603 So.2d 739 (La.1992). To determine if a sentence is grossly disproportionate, the court must consider the punishment and the crime in light of the harm to society and determine whether or not the penalty is so disproportionate that it shocks our sense of justice. State v. Pearson, 425 So.2d 704, 705 (La.1982). A sentence may be excessive either by length or because the circumstances warrant a less onerous sentencing alternative. State v. Telsee, 425 So.2d 1251, 1253-54 (La.1983).
The life sentence imposed in the instant case is clearly excessive. Although purse snatching, La.Rev.Stat. 14:65.1, is regarded as a violent felony, thus triggering the "three strikes" provision of La.Rev. Stat. 15:529.1(A)(1)(b)(ii), it appears the least heinous of those enumerated in La. Rev.Stat. 14:2(13), which defines "violent felony" for the purpose of the multiple offender statute. Furthermore, the defendant committed the underlying crime in *802 the least reprehensible manner. He was unarmed, the criminal act was limited to reaching out to snatch the purse, the victim was not harmed, and her property was recovered immediately following the offense. Finally, the defendant's prior convictions for simple burglary were nearly ten years old when he committed the instant offense.
In view of the circumstances, we find the life sentence imposed by the trial court to be grossly out of proportion to the severity of the crime.
Accordingly, the defendant's sentence is vacated and the case is remanded to the trial court for resentencing consistent with this opinion.
SENTENCE VACATED; REMANDED FOR RESENTENCING.
KIRBY, J., dissents.
KIRBY, J., dissenting.
I dissent for the reasons assigned in State v. Jackson, 98-2540 (La.App. 4 Cir. 8/12/98), 718 So.2d 1001.