764 So.2d 148 (2000)
STATE of Louisiana
v.
Man L. DANK a/k/a Man Danh.
No. 99-KA-0390.
Court of Appeal of Louisiana, Fourth Circuit.
May 24, 2000.
*153 Harry F. Connick, District Attorney of Orleans Parish, Cate L. Bartholomew, Assistant District Attorney, New Orleans, Louisiana, Counsel for State-Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant-Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr.).
PLOTKIN, Judge.
Defendant Man L. Dank a/k/a Man Danh was charged by bill of information with possession with intent to distribute amphetamines, a violation of La. R.S. 40:967. Defendant pled not guilty at his July 9, 1998 arraignment. The trial court found probable cause and denied defendant's motions to suppress the evidence and statements. Defendant was found guilty of attempted possession with intent to distribute amphetamines on August 26 1998, following trial by a twelve-person jury. On October 26, 1998, defendant waived all legal delays and was sentenced to thirty months at hard labor in the Orleans Parish Prison "About Face Program," with credit for time served. Defense counsel noted an objection to the sentence, and orally moved for an appeal, which was granted that date by the court.

STATEMENT OF FACTS:
FBI Special Agent Stacy Arruda testified that between 1:00 and 2:00 a.m. on the morning of June 5, 1998, she and approximately seven or eight other federal law enforcement personnel were looking for a fugitive at 12345 I-10 Service Road. While at that address, Agent Arruda noticed a red Ford Escort occupied by four Vietnamese males drive up, drop off two males, turn around and park. As she approached the car to determine whether it contained the fugitive they were seeking, the driver fled by foot. Defendant exited the passenger side of the vehicle and attempted to run, whereupon Agent Arruda drew her weapon and ordered defendant to freeze. Defendant attempted to flee, but was restrained and handcuffed by another agent. The defendant gave vague answers to questions about who he was, the ownership of the car, where he was going, who his friend was, etc. When the agents ascertained his identity from a driver's license, the defendant finally admitted that the vehicle belonged to him.
Agent Arruda asked defendant if he minded if she looked in his car, and defendant replied: "No." She asked him again, and he replied: "No, you're not going to find anything." Upon inspection, Agent *154 Arruda found a bag behind the ashtray of the car containing two hundred and forty-seven amphetamine pills. On cross-examination, Agent Arruda testified that the car defendant was in was a rental car, but was rented in his name.
New Orleans Police Officer John Palm was qualified by stipulation as an expert in the identification and analysis of amphetamines. It was stipulated that the substances in the bags seized by Agent Arruda were amphetamines. Officer Palm admitted on cross-examination that the evidence tag on the bag of amphetamines, which had been completed by a New Orleans Police Officer, stated that the evidence was found by FBI Agent Linda Dillon.
FBI Special Agent John Nguyen testified that he chased an individual who ran from the car, and when he returned other agents had defendant on the ground handcuffed. He said the two Vietnamese males who had first exited the car had headed toward the apartment the agents had just searched. He said he helped search the car, but that Agent Arruda found the amphetamines.
FBI Special Agent Linda Dillon testified that the first two Asian males who exited the car headed toward the apartment building where the fugitive's sister-in-law lived. She said she questioned defendant, attempting to find out whether he was the fugitive they were seeking, explaining that he looked like the fugitive. She also asked defendant whether or not one of the three other men who fled was the fugitive. She searched defendant's wallet, found his driver's license, and was able to ascertain that he was not the fugitive. She found a rental car agreement in the wallet, and defendant admitted that he had rented the car, stating that his car had been in a wreck.
New Orleans Police Officer Melvin Johnson testified that he mistakenly wrote in his report that FBI Special Agent Linda Dillon found the amphetamines, but that the agent who found the drugs was actually Stacy Arruda.
New Orleans Police Officer Borjius Guient testified that he filled out the evidence tag to affix to the bag of amphetamines, writing that he had received it from Special Agent Linda Dillon, whom he had assumed was the white female agent on the scene.
FBI Special Agent Joseph Trigg testified that defendant attempted to run away from Agent Arruda, but he grabbed him and ordered him to the ground.

ERRORS PATENT:
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1:
By this first assignment of error, defendant asserts that the trial court erred in denying his motions to suppress the evidence and statements, arguing that FBI agents had no reasonable suspicion to stop him.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, (La.7/2/99), 750 So.2d 893, cert. denied, Edwards v. Louisiana, ___ U.S. ___, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, (La.App. 4 Cir. 9/22/99), 752 So.2d 192.
La.C.Cr.P. art. 215 A provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, *155 or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, P. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914; State v. Mitchell, 98-1129, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Flight from police officers, alone, will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Sartain, 98-0378, pp. 17-18 (La. App.12/1/99), 746 So.2d 837, 849. However, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 459, citing Benjamin. Further, flight by one's companion at the sight of police can be a factor in determining reasonable suspicion. Id. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. Benjamin, supra; Fortier, supra.
In the instant case, eight to nine FBI agents and other federal law enforcement authorities, who apparently were in plain clothes, had just exited an apartment belonging to the sister-in-law of a federal fugitive wanted for attempted murder. The fugitive was a Vietnamese male. The agents observed a vehicle occupied by four Vietnamese males drive up into the parking lot in front of the apartment building they had just left. Two individuals exited the vehicle and walked toward that same building, while the driver parked. Agent Arruda said that as the car parked, she walked toward it "to see who was in the car." Agent Arruda, it can be assumed, had a photograph of the fugitive-as Special *156 Agents Nguyen and Dillon testified they didand thus could have made a visual identification.
"A person's liberty and privacy are not violated simply because a police officer attempts to talk with him as long as that individual is free to disregard the questioning and walk away." State v. Burns, 95-1500 (La.App. 4 Cir. 6/5/96), 675 So.2d 1233, 1237, citing U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Thus, Agent Arruda's initial approach toward defendant and the driver of the vehicle was lawful. She did not need reasonable suspicion to approach and talk to them, or to more closely scrutinize them.
Agent Arruda said she drew her weapon and ordered defendant to stop, after seeing the driver run away, and seeing defendant turn and begin to flee. She also testified that as defendant exited the vehicle: "I noticed all the tattoos on [defendant's] arm and immediately drew my weapon and told him to freeze." However, Agent Arruda did not testify as to any significance she attached to the presence of the tattoos-such as that the fugitive had similar tattoos, or that the fugitive was a gang member and Vietnamese gang members have such tattoos.[1] Therefore, this factor cannot weigh for or against the finding of reasonable suspicion to stop defendant.
At no point in her testimony did Agent Arruda ever say that she was prompted to draw her weapon because defendant looked like the fugitive-other than the fact that he was a Vietnamese male. However, at trial, Agent Linda Dillon of Korean descent, testified that defendant looked like the fugitive-or at least like the photograph of the fugitive the agents had. Agent Nguyen said he knew the fugitive very well, and that after looking at defendant, he knew defendant was not the fugitive. The import of his testimony indicates that Agent Nguyen meant that he could see defendant was not the fugitive after viewing him close-up.
The Louisiana Supreme Court stated in State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), quoting Scott v. U.S., 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Thus, even though Agent Arruda did not testify that defendant looked like the fugitive, the evidence indicates that, objectively, defendant did resemble the fugitive.
Agent Arruda said the two other individuals who exited the car went into "Building 10," which contained the apartment of the fugitive's sister-in-law. Testimony by Special Agents Dillon, Nguyen and Trigg confirmed that the two males either headed toward this building. While Agent Arruda said she later learned from Special Agent Robert Burkes, who did not testify, that those two individuals also ran from the agents, she said she did not learn of this until after she had stopped defendant.
In State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, the Louisiana Supreme Court upheld the stop of a defendant who clutched at his waistband and fled after seeing uniformed police officers in a marked unit drive alongside of him. In rejecting this court's finding that the officers did not have reasonable suspicion to stop the defendant because it was not a crime to run from police while clutching one's waistband, the court stated: "Police do not have to observe what they know to criminal behavior before investigating. *157 The requirement is that the officer have a reasonable suspicion of criminal behavior." Id. at 989.
Considering the totality of the circumstances, at the time Agent Arruda drew her weapon and effected an investigatory stop of defendant, she could have had reasonable suspicion to believe either that defendant was the fugitive the agents were seeking, or that he had been in the company of the fugitive immediately prior to the stop, and therefore was committing the crime of being an accessory after the fact by aiding and abetting a fugitive.
Defendant argues that even if he was lawfully stopped, he should have been released after the agents determined that he was not the fugitive. However, the evidence indicates that defendant's initial answers to the agents' questions aroused their suspicions even before he was excluded as the fugitive. Agent Dillon, who assisted Agent Trigg, the agent who physically restrained defendant when he started to flee, testified that when she asked defendant his name, he replied "Lee." She said this surprised her because it did not sound like a Vietnamese name, and stated: "I wanted to make sure he was not [the fugitive]. That was my main concern." She said she took his wallet to look for identification, eventually finding his driver's license.[2] During this process Agent Dillon asked defendant if the fugitive was with him, and asked him who the others were who had been with him. Defendant replied that he did not know who the others were, but, at the same time, denied that one of them was Viet Mai, the fugitive. Agent Arruda testified defendant stated that he was just getting a ride with a friend, but claimed not to know his friend's name. Asked where he was going, defendant said he did not know. Such vague and seemingly evasive answers warrant reasonable suspicion of criminal activity and, consequently, further investigation. See State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881; State v. Shapiro, 98-1949 (La.App. 4 Cir. 12/29/99), 751 So.2d 337, 340. At this point, the agents were justified in further investigating defendant, as the objective facts were sufficient for them to suspect that defendant might have committed a crime. After defendant admitted that the car had been rented by him, Agent Arruda asked defendant if she could look inside, and defendant gave his consent for her to search his car.
A search conducted pursuant to consent is a recognized exception to the warrant requirement. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, 898, cert. denied, Edwards v. Louisiana, ___ U.S. ___, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). The burden is on the State to prove that such consent to search was given freely and voluntarily. State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 138. However, defendant does not argue that his consent was not freely given. Nevertheless, although defendant apparently remained in handcuffs during this time, defendant appears to have freely given his consent, either not knowing of the presence of the drugs, or believing the drugs were so cleverly concealed behind the ashtray that the agents would never find them.
The trial court did not abuse its discretion in denying the motion to suppress either the evidence or any inculpatory statements made by defendant.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2:
By this assignment of error, defendant claims that the prosecutor's indirect references in his opening statement to defendant's failure to testify constituted reversible error.
Defendant cites the prosecutor's tactic of stating to the jury that there were two conflicting "stories," characterizing defendant's not guilty plea as one story, being that he did not commit the crime charged. *158 The prosecutor noted that defendant was not required to take the stand, and the jury could not hold that against him, but nevertheless, had put a story before them. Defense counsel objected, arguing that the defense had no story, and that a not guilty plea simply meant that he was not guilty of the crime. The trial court sustained the objection, directing the prosecutor to restate his argument. The prosecutor continued, stating that there was a conflict in stories, and defense counsel again objected, on the ground that there were no conflicting stories.
On appeal, defendant cites La.C.Cr.P. art. 770(3) for the proposition that a prosecutor is prohibited from commenting on the failure of a defendant to testify in his own defense. La.C.Cr.P. art. 770(3) provides that "upon motion of a defendant, a mistrial shall be declared..." when a prosecutor, among others, makes a remark or comment during the trial which refers directly or indirectly to the failure of the defendant to testify in his own behalf.
However, defense counsel failed to move for an admonition or a mistrial, the only forms of relief contemplated by La.C.Cr.P. art. 770. When a trial court sustains an objection to the prosecutor's remarks and defense counsel fails to request an admonition or mistrial, the defendant cannot claim the comment was prejudicial. State v. Biagas, 99-2652, p. 11 (La.App. 4 Cir. 2/16/00), 754 So.2d 1111, 1117-18; State v. Baylis, 388 So.2d 713, 720-721 (La.1980). Defense counsel's failure to move for an admonition or mistrial may indicate that counsel did not believe the prosecutor was referring to defendant's failure to testify or that the comments were prejudicial.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3:
By this assignment of error, defendant claims the trial court erred in failing to declare a mistrial based on attempts by the prosecution to elicit testimony of other crimes evidence from Agents Arruda and Nguyen.
When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible, the defendant's remedy is a request for an admonition or a mistrial pursuant to La.C.Cr.P. art. 771. The remark or comment must constitute an unambiguous reference to other crimes. State v. Lewis, 95-0769 (La.App. 4 Cir. 1/10/97), 687 So.2d 1056, 1060, writ denied, 97-0328 (La.6/30/97), 696 So.2d 1004. Upon request by the defendant, the trial court shall admonish the jury to disregard such remark or comment. La.C.Cr.P. art. 771. Upon motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial. Id. The granting of a mistrial under La.C.Cr.P. art. 771 is at the discretion of the trial court, and a mistrial should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515, 522 (La.1982); State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1085, writs denied, 95-2557, 95-2475, (La.2/2/96), 666 So.2d 1087. "Mistrial is a drastic remedy, and is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial." State v. Wessinger, 98-1234 (La.5/28/99), 736 So.2d 162, 183, cert. denied, Wessinger v. Louisiana, ___ U.S. ___, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999). "The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion." Id.
Agent Arruda testified that the agents went to the apartment of the fugitive's sister-in-law, and noted that the woman's husband was a known gang leader in the New Orleans and Atlanta areas. *159 Defense counsel preemptively objected to testimony about the sister-in-law, which the trial court overruled. When the gang affiliation of the sister-in-law's husband was mentioned, defense counsel moved for a mistrial. The trial court denied the motion for mistrial, but admonished the jury that the agent was entitled to give some background information to explain why she was on the scene, but that none of this information was to be held against defendant. Defendant asserts in his brief that the prosecution, through the eliciting of this comment, "planted in the minds of jurors the idea that the appellant was a dangerous gang member or even a gang leader and not even a local gang leader, but a foreigner from Atlanta."
At no time was defendant characterized by any witness as a gang member, much less a gang leader, or a gang leader from Atlanta. The comment was about the husband of the fugitive's sister-in-law. The jury could reasonably have been expected to follow the trial court's admonition that such information was for background purposes only, to show why the agents were out in such force at the apartment complex that morning.
Special Agent Nguyen subsequently testified that it was the fugitive's brother who was the gang leader, and husband of the woman living in the apartment. Defense counsel again objected to the gang leader comment. Agent Nguyen, who is fluent in Vietnamese, further testified that he asked defendant in Vietnamese, if he knew the location of the fugitive, to which defendant replied that he did not know anything. However, Agent Nguyen said that defendant also spoke English, and that he spoke to defendant in English, as did Agents Arruda and Dillon. The prosecutor asked if it was common that Vietnamese can speak both English and Vietnamese. Agent Nguyen started to reply that in his experience investigating "Vietnamese criminals and gangs ...," and defense counsel objected on the grounds of relevance. When the prosecutor asked what Vietnamese people do when "caught," Agent Nguyen answered that they pretend they do not understand any English at all. Defense counsel then requested a mistrial, which the trial court denied.
In this instance, nothing Agent Nguyen said referred directly or indirectly to another crime committed by defendant. In fact, Agent Nguyen's comment, if anything, was exculpatory in nature. He essentially stated that Vietnamese criminals pretend they do not understand any English at all when apprehended by authorities. However, Agent Nguyen and other law enforcement witnesses testified that defendant understood English. Implicit in their testimony was that he never pretended not to understand English. Therefore, if Vietnamese criminals pretend they do not understand any English at all, and defendant did not pretend he did not understand English, it would follow that defendant is not a Vietnamese criminal. The statement did not prejudice defendant, and defendant has failed to show that the trial court abused its discretion in failing to grant a mistrial because of Agent Nguyen's or Agent Arruda's comments.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4:
By this assignment of error, defendant claims the trial court erred in denying his motion for mistrial after the prosecutor made impermissible and prejudicial remarks during rebuttal argument.
The scope of closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant." La.C.Cr.P. art. 774. However, a prosecutor retains "considerable latitude" when making closing arguments. State v. Taylor, 93-2201 (La.2/28/96), 669 *160 So.2d 364, 374, cert. denied, Taylor v. Louisiana, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Further, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Casey, 99-0023, (La.1/26/00), ___ So.2d ___, ___, 2000 WL 101212. Even if the prosecutor exceeds the bounds of proper argument, the court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. Id.; State v. Ricard, 98-2278, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 395.
In the instant case, defendant complains of four instances of alleged improper comments by the prosecutor. In the first instance, the prosecutor referred to amphetamines being an uncommon drug in New Orleans. Defense counsel objected, and the trial court sustained the objection. In the fourth instance, the prosecutor referred to defense objections every time the word gang was mentioned. The trial court also sustained this objection. In neither of the above two instances did defense counsel request an admonition or a mistrial. "When a trial court sustains an objection to the prosecutor's remarks and defense counsel fails to request an admonition or mistrial, the defendant cannot claim the comment was prejudicial." State v. Biagas, supra; State v. Baylis, supra. Because defense counsel failed to request an admonition or a mistrial, he cannot argue that he was prejudiced by the prosecutor's comments. Further, the comment regarding the gangs was in response to statements made by defense counsel in his closing argument, that despite the mention of gangs and tattoos, there was no proof of any of that, and that if the State had wanted to prove it, they could have presented a witness. The State's remarks that the defense objected any time the word "gang" was mentioned was simply a rebuttal to that comment by the defense.
In the second instance, the prosecutor referred to the victims in the case being the citizens of New Orleans. Defense counsel objected, and the trial court overruled the objection. The prosecutor was not appealing to prejudice in making this statement, he was simply addressing a perception held by some individuals-perhaps by some of the jurors-that drug use is a so-called "victimless" crime.
In the third instance, the prosecutor speculated as to the cost of the individual amphetamine pills, but noted that this was not evidence, and asked the jurors to consider what they thought the drugs were worth. Defense counsel objected, but his objection was overruled. No proof is needed for the proposition that the amphetamine pills were of some value, and defendant was being tried for possession of the drugs with the intent to distribute. However, there was no evidence presented at trial as to any specific value. Be that as it may, we do not find that this comment, or any of the comments complained of in this assignment of error, influenced the jury and contributed to the verdict.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, defendant claims that his thirty-month sentence is constitutionally excessive.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir. *161 1987), writ denied, 516 So.2d 366 (La. 1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677; State v. Webster, 98-0807 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 656 So.2d at 979; State v. Hills, 98-0507 (La. App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
In State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La. 1982).
Id.
Defendant acknowledges that he was sentenced to the minimum sentence provided by law, thirty months, for a conviction of attempted possession of amphetamines with the intent to distribute, pursuant to La. R.S. 14:27 and 40:967. Defendant argues however, that the trial *162 court failed to articulate sufficient reasons for the sentence, and that the sentence is disproportionate to the severity of the crime. Defendant points out that he was a "first offender," a factor which should have been given more weight by the trial court.
Defendant cites no authority for the proposition that this minimum sentence is disproportionate to the crime, because there is no such authority. Defendant was convicted of attempted possession with the intent to distribute two hundred and forty-seven (247) pills. It cannot be said that this sentence is disproportionate to the crime for which he was convicted. Defendant was not a "first offender," as he claims in his brief. The trial court acknowledged that defendant was a first felony offender, but had a prior misdemeanor conviction for assault. The court noted that the probation department did not recommend that defendant be given a suspended sentence or placed on probation. The court sentenced defendant under the provisions of La. R.S. 15:574.5, to a "boot camp" type of program, which might result in an early release-according to what his counsel indicated at sentencing.
While the trial court did not recite factor by factor all of the considerations of La. C.Cr.P. art. 894.1, the record supports the sentence, and it cannot be considered constitutionally excessive.
Because there is also no merit to this assignment of error, and because there are no errors patent, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defense counsel asked to approach the bench at Agent Arruda's mention of the tattoos, and a bench conference was held.
[2] Defendant makes no argument that the search of his wallet was unlawful.