JOY COSSICH LOBRANO, Judge.
hThe State charged the defendant, Vincent Guillot, with one count of possession with the intent to distribute heroin, a violation of La. R.S. 40:966(A)(1); one count of possession with intent to distribute diazep-am, a violation of La. R.S. 40:969(B); and one count of possession of marijuana (fourth felony offense), a violation of La. R.S. 40:966(D)(4). Guillot pled not guilty, and later filed a motion to suppress, which the trial court denied.
Thereafter, the State amended the bill of information to add a fourth count, possession of cocaine, a violation of La. R.S. 40:967(C)(2), and to change the charge of possession of heroin with the intent to distribute to simple possession of heroin. Guillot withdrew his previous plea and pled guilty to all charges, as amended, under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the denial of his motion to suppress. The trial court sentenced Guillot to ten years on counts one through three and five years on count four; the sentences were to run concurrently. The trial court also suspended the sentences for each count, placed Guillot on active probation for five years, and ordered him to pay $191.50 in court costs.
Guillot timely appealed.
12At the motion hearing, Sergeant Kevin Imbraguglio (“Sgt. Imbraguglio”), a sixteen-year veteran of the New Orleans Police Department assigned to the First District Narcotics Division, testified that on October 20, 2010, he received information from a concerned citizen that a subject named “Vinny” or “V,” driving a gray Chevrolet Monte Carlo automobile, later identified as Guillot, was selling narcotics in the area of St. Ann and Rocheblave Streets. The concern citizen stated the subject was wearing a red hat and a red shirt and described the subject as a light skinned black male with a beard and long dreadlocks. The citizen informant said the subject lived in the area and stored the narcotics in the Monte Carlo because his grandparents did not allow drugs in their residence.
After receiving this information, Sgt. Imbraguglio set up surveillance that same day on the corner of Rocheblave and St. Ann. During the surveillance, he observed a gray Monte Carlo pull up and a subject fitting Guillot’s description and wearing a red hat and red shirt, exit the driver’s side of the vehicle. He further observed another black male exit the passenger side, while a female juvenile[1] remained in the vehicle. Sgt. Imbraguglio testified that he then observed Guillot and the other man approach a group of individuals loitering at the corner of St. Ann and Rocheblave Streets. Subsequently, Sgt. Imbraguglio advised the officers assisting him in the investigation to move in and “stop” the subjects. Sgt. Imbraguglio approached Guillot, informed him that he was conducting a narcotics investigation and advised *627 him of his Miranda rights. Sgt. Imbra-guglio stated after he informed Guillot of this, Guillot appeared “nervous” and “looked a little |ashaken.” At this point, Guillot advised Sgt. Imbraguglio that his name was Vincent Guillot, but that he also went by “Vinny” or “V.”
Sgt. Imbraguglio further testified that within minutes he called for a narcotics dog to the scene to further corroborate the information he had received from the concerned citizen. When the canine unit, Officer Shaw and a narcotics dog named Rush, arrived, the dog indicated the presence of drugs on the driver’s side of vehicle. Sgt. Imbraguglio then inspected the vehicle and found a pill bottle, displaying Guillot’s name, inside the door frame of the driver’s side that contained marijuana, some heroin, and about six diazepam pills. The officers also recovered twenty-five smaller bags of heroin, amounting to one-half ounce. After discovering the narcotics, Sgt. Imbraguglio placed Guillot under arrest, searched him and found $858.00 on his person. Field tests confirmed that the substances found in the Monte Carlo were marijuana and heroin.[2] Sgt. Imbraguglio also testified that at some point Guillot’s grandparents arrived on the scene. Guil-lot’s grandfather stated the he owned the Monte Carlo, but had allowed Guillot to use it. Guillot’s grandfather also consented to a search of his house because he did not want any contraband in his residence. However, no contraband was found in the residence.
A review of the record reveals no errors patent.
Guillot’s sole assignment of error is that the trial court abused its discretion by denying his motion to suppress. Specifically, Guillot claims the trial court erred in finding that the officer had reasonable suspicion to conduct the investigatory stop and the search of his car.
14At a hearing on a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 708(D).
The trial court is vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The trial court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 01-2199, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218; U.S. v. Seals, 987 F.2d 1102, 1106 (5 Cir.1993).
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. U.S. Const. Amend. IV; La. Const. Art. I, § 5; State v. Francis, 10-1149, 10-1150, p. 4 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 708 writ denied, 11-0571 (La.10/7/11), 71 So.3d 311. However, a law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him, his name, address, and an explanation of his actions. La.C.Cr.P. art. 215.1(A); see also, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983).
*628 “Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Dank, 99-0390, p. 4 (La.App. 4 Cir. 5/24/00), 764 So.2d 148, 155 recitations omitted). Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. Id. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. Id. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. Id. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. Id. at p. 5, 764 So.2d at 155. In reviewing the totality of the circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. Id. Deference should be given to the experience of the officers who were present at the time of the incident. Id.
Guillot argues that the anonymous tip combined with the officer’s observations were insufficient to justify an investigatory stop. He claims that the only information corroborated by the surveillance was that a subject matching the anonymous tipster’s description was driving a gray Monte Carlo. Guillot emphasizes that the officers only observed his talking with individuals at the corner and not any illegal activity prior to initiating the stop. Guillot further argues that subsequent confrontation and search was unlawful and, thus, the evidence seized should be suppressed. In support of his argument, Guillot relies on State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268.
The State, on the other hand, argues that Sgt. Imbraguglio had reasonable suspicion to stop Guillot because the officer’s independent observations corroborated the details of the tip provided by the concerned citizen, including: the physical description of Guillot, his clothing, and the car he was driving; the | ^location where he could be found; the crime he was engaged in; the details of his personal life; and his nickname.
Generally, for an anonymous tip to provide reasonable suspicion there must be some corroboration of the anonymous tip and the tip must contain predictive information regarding the future behavior of the reported suspect. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); Robertson, 97-2960 at p. 5, 721 So.2d at 1270. Whether an anonymous tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Dank, 99-0390 at p. 4, 764 So.2d at 155. The sufficiency of an anonymous tip under Terry v. Ohio is determined by the reliability of its assertion of illegality and not just its tendency to identify a determinate person. Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000); State v. Johnson, 01-2436, p. 2 (La.1/25/02), 806 So.2d 647, 648.
The anonymous caller’s ability to predict the suspect’s future behavior goes towards reliability, as it demonstrates inside information and a special familiarity with the suspect’s affairs. Robertson, 97-2960 at pp. 7-8, 721 So.2d at 1270; see also, State v. Wilson, 99-2334, pp. 6-7 (La.App. 4 Cir. 3/15/00), 758 So.2d 356, 359 (citing Alabama v. White, 496 U.S. at 332, *629 110 S.Ct. at 2417). Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. Robertson, 97-2960 at pp. 7-8, 721 So.2d at 1270.
In Robertson, the police officers received an anonymous tip from a concerned citizen that the defendant, who was named and described, was selling |7drugs within the Magnolia Housing Development. The tip also described the defendant’s vehicle and provided an address where the vehicle would be parked when the defendant was not using it to sell drugs. After going to the location, the officers saw the vehicle being driven away and followed the vehicle. When the defendant parked and exited the vehicle, the officers detained him and called for a canine. When the dog indicated that an odor of narcotics was coming from inside the vehicle, police entered the vehicle and discovered a large plastic bag filled with crack cocaine underneath the ashtray. Thereafter, the defendant was placed under arrest. The trial court denied the defendant’s motion to suppress the evidence, and this Court denied the defendant’s writ application. The Louisiana Supreme Court reversed, finding that, although the officers corroborated certain aspects of the tip, such as the defendant’s name, physical description, and the location of the vehicle, the tip contained no predictive information and, therefore, there was no reasonable suspicion to stop defendant. Robertson, 97-2960 at pp. 5-7, 721 So.2d at 1270-1271.
It is well-settled “thát the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer’s subjective beliefs or attitudes but turns on a completely objective evaluation of all circumstances known to the officer at the time of his challenged action.” State v. Kalie, 96-2650, p. 1 (La.9/19/97), 699 So.2d 879, 880, citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
Based on our review of the record, we find the instant case is distinguishable from Robertson. Here, Sgt. Imbraguglio, an experienced narcotics detective, received a tip from a concerned citizen that he was able to corroborate as completely accurate through his surveillance. He observed Guillot and another |8man exit the vehicle, leaving a female child alone in the vehicle, and approach a group of individuals loitering at the street corner. Although Sgt. Imbraguglio never observed Guillot exchange drugs with another person at the corner, we find, based on the officer’s training and experience and his corroboration of the tip, he had the reasonable suspicion needed to conduct an investigatory stop once the young child was left unattended in the vehicle that the officer believed contained illegal drugs. At that point, the officer was objectively justified in pursuing a means of investigation that would quickly confirm or dispel his suspicions. La. C. Cr. P. art. 215.1(A); see State v. Terrence Turner, 12-0180, p. 3 (La.3/01/13), 108 So.3d 753 (per curiam), citing State. v. Miller, 00-1657, p. 3 (La.10/26/01), 798 So.2d 947, 949. Moreover, only a few minutes passed between the time the officers stopped Guillot, Sgt. Imbraguglio advised him of his Miranda rights and verified his identity, and the canine unit appeared at the scene and alerted to drugs in the vehicle. At that point, the officers had probable cause to arrest Guillot and search the vehicle. Under these circumstances, we find the trial court did not abuse its discretion in denying Guillot’s motion to suppress.
*630 Accordingly, we affirm Guillot’s conviction and sentence.
AFFIRMED
BAGNERIS, J., dissents.

. The police report indicates the female juvenile turned 11 years of age a week before the incident.

. Sgt. Imbraguglio specifically testified that the contraband tested positive for marijuana and heroin. The police report also provides that diazepam pills were identified through internet software.