| STATE OF LOUISIANA | * | NO. 2019-K-1096 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| KARI SHISLER & JOSEPH | * | |
| DYCZEWSKI | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 543-065, SECTION "E"
Honorable Keva M. Landrum-Johnson, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *

(Court composed of Judge Regina Bartholomew-Woods, Judge Paula A. Brown,
Judge Dale N. Atkins)

Jeffrey Smith
ATTORNEY-AT-LAW
700 Camp Street
New Orleans, LA 70130

Gary Wainwright
ATTORNEY-AT-LAW
2739 Tulane Avenue
New Orleans, LA 70119
     COUNSEL FOR DEFENDANTS/RESPONDENTS

Leon A. Cannizzaro, Jr.
DISTRICT ATTORNEY, PARISH OF ORLEANS
Donna R. Andrieu
DISTRICT ATTORNEY'S OFFICE, CHIEF OF APPEALS
Hannah Sharp
DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119
     COUNSEL FOR STATE OF LOUISIANA/RELATOR

**WRIT GRANTED; STAY DENIED**
**DECEMBER 23, 2019**

Relator, the State of Louisiana, seeks supervisory review of the district court's December 18, 2019 ruling that granted Defendants' motions to suppress physical evidence and statements, as well as, the ruling that found no probable cause to arrest Defendants Joseph Dyczewski and Kari Shisler. For the reasons that follow, we grant the State's writ and reverse the district court's rulings. We also deny the State's request for a stay.

**Background**

Defendants were arrested and charged with possession with intent to distribute controlled dangerous substances, to wit: Tetrahydrocannabinol ("THC"), Methelyndioxymethamphetamine ("MDMA"), Cocaine, and more than two and one-half pounds of Marijuana.[1] Defendants filed a motion to suppress statements and physical evidence. After an evidentiary hearing, the district court granted Defendants' motions.

At the September 24, 2019 hearing on the motions, Gretna Police Department Detective Brad Cheramie, who is also a member of the multi-

---

[1] Violations of La. R.S. 40:966 (B)(2)(a), (B)(1), and (B)(2)(b).

jurisdictional Major Crimes Task Force ("the task force") testified, *inter alia*, to having received information from a reliable and credible informant that Dyczewski was distributing large quantities of marijuana. Acting on this information, the task force conducted surveillance of Dyczewski during the months of March, April, and May. As a result of that rolling surveillance, the task force was able to observe his daily and nightly routines. The task force observed that Dyczewski would do the following: make long trips up north; quick stops; stay at a business for less than two minutes; drive at a slow rate of speed; and make "heat runs."[2] With regard to the "heat runs" Det. Cheramie noted that Dyczewski would stop at random places, but never go inside of them such as the Lowe's close to his home. He also noted that Dyczewski would go to Veterans and Harahan "very often" and make "quick stops," but "would never stay long, never come out with anything."

After months of surveillance, and armed with the information provided by the confidential informant, the task force elected to conduct an investigatory stop of Dyczewski, outside of his home located on Lafaye Street.[3] On the date in question, Det. Cheramie testified that when he approached Dyczewski he detected an odor of marijuana. After agents with the task force told him that they could smell marijuana, Dyczewski told them he had a mason jar of marijuana in his pocket. Dyczewski was *Mirandized* and placed under arrest.

---

[2] Det. Cheramie explained that heat runs are when a person suspected of drug dealing "make several unexplained U-turn stops, pulling in somewhere, hurry in and pulling back out, just to get somebody—if the police were following you, that they couldn't tail you, and you'd be able to see another car doing the same motions as you."

[3] Det. Cheramie testified that the task force devised a plan regarding the best and safest place to approach Dyczewski, which in fact proved to be his home, as opposed to "grabbing him at a bar at night when he's drinking."

Upon placing him under arrest, the agents noticed that Dyczewski had digital cameras located on the outside of his residence. Det. Cheramie explained that the task force then decided to do a protective sweep of the home. This was done for safety purposes, because he knew that Dyczewski's wife was inside, but unsure of who else may be, as well as to prevent the destruction of any evidence that may be located inside the home. As a result of the protective sweep, the task force detained co-defendant Shisler. Det. Cheramie then obtained a search warrant for the residence. Upon conducting a search of the home, pursuant to the search warrant, Dyczewski told the task force that marijuana, cocaine, and ecstasy pills were located inside, which the task force recovered. Dyczewski also stated that Shisler was aware of his drug sales.

**Question Presented**

Whether the district court erred when it suppressed both the statements of Defendant and evidence seized from Defendant's home.

**Standard of Review**

The district court's ultimate decision on a motion to suppress evidence "is afforded great weight and will not be set aside unless there is an abuse of that discretion." *State v. Wells,* 2008-2262, p. 5, (La. 07/06/2010), 45 So.3d 577, 581. The district court's findings of fact are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed *de novo*. *State v. Guillot*, 2012-0726, p. 4, (La. App. 4 Cir. 04/17/2013), 115 So.3d 624, 627.

**Discussion**

In *Guillot*, this Court considered whether the district court abused its discretion in denying Defendant's motion to suppress where Defendant alleged that the arresting officer did not have reasonable suspicion to conduct an investigatory stop and search of his car. Defendant argued that information received by the officer, from a concerned citizen, combined with the officer's observations were insufficient to justify an investigatory stop. This Court, citing *State v. Kalie*, 1996-2650, p.1 (La. 9/19/97), 699 So.2d 879, 880, noted "that the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, . . . turns on completely objective evaluation of *all* circumstances known to the officer at the time of his challenged action." This Court found that the officer was an experienced narcotics detective and received information he was able to corroborate as completely accurate through his surveillance. This Court further found that based on the officer's training and experience, as well as his corroboration of the information he received, he had reasonable suspicion needed to conduct an investigatory stop…and was justified in pursuing a means of investigation that would confirm or dispel his suspicions. *Guillot*, 2012-0726, p. 8; 115 So.3d at 629.

Similarly, in the case *sub judice*, Det. Cheramie, an experienced narcotics investigator, who is part of a multi-jurisdiction task force, testified that he received information relative to Dyczewski's drug-related activities from a confidential informant. He was able to corroborate the information received regarding the

4

activities Dyczewski engaged in during the three-month surveillance time-frame. An objective evaluation of all circumstances known to Det. Cheramie and his agents at the time of the investigatory stop pointed to the fact that Dyczewski was involved in drug activity, including, but not limited to, drug sales. His training and experience as part of the drug task force corroborated the information received from the confidential informant. As such, Det. Cheramie had reasonable suspicion needed to conduct an investigatory stop. The subsequent admission by Dyczewski that he had a mason jar of marijuana in his pocket, after agents with the task force smelled the odor of marijuana emanating from his person, justified the task force to place Dyczewski under arrest. The observation of the digital cameras on the exterior of the home, gave the task force members the justification needed to conduct a protective sweep of the home, and ultimately the basis for obtaining a search warrant.

Thus, for the aforementioned reasons, we **GRANT** Relator's writ and **REVERSE** the of rulings of the district court, which suppressed the statement an evidence. The Stay is **DENIED.**

**WRIT GRANTED; STAY DENIED**