JOY COSSICH LOBRANO, Judge.
|TOn October 19, 2010, the defendant, Vonzo Magee, was charged by bill of information with possession of heroin, a violation of La. R.S. JOSeeCCXl).[1] The defendant pled not guilty at his arraignment on October 28, 2010. After a suppression and preliminary hearing on January 14, 2011, the trial court denied the defendant’s motion to suppress evidence and found probable cause. The defendant was found guilty of attempted possession of heroin after a jury trial on September 12-13, 2011. On September 30, 2011, the trial court sentenced the defendant to serve four years at hard labor with credit for time served. On the same date, the defendant pled guilty to a multiple bill, alleging him to be a second felony offender. The trial court vacated the original sentence and resentenced the defendant as a second felony offender to serve four years at hard labor, without | ^benefit of probation, parole or suspension of sentence. The defendant was also ordered to pay $35.00 to the Indigent Defense Fund. Thereafter, the defendant filed oral motions for new trial and for reconsideration of sentence. The trial court denied both motions. This appeal followed.
In September 2010, Detective Raymond Veit, with the New Orleans Police Department Narcotics Unit, was part of a multi-jurisdictional narcotics task force. As part of the task force, he was involved in the investigation of possible narcotics trafficking. The investigation involved the sur *682 veillance of 4026 Baudin Street. The specific target was Jonathan Lawrence, who resided at 4026 Baudin Street.[2] Det. Veit obtained a search warrant for the premises on September 15, 2010, and executed the warrant on September 17, 2010. A surveillance of the residence was conducted before the warrant was executed. During the surveillance on September 17, 2010, the detective observed Lawrence and the defendant leave the residence and get into a white Cadillac SUV. Lawrence was in the driver’s seat, and the defendant was in the front passenger seat. The officers decided to' stop the vehicle before executing the search warrant. Once the vehicle was secured, Det. Veit, Detective Ashton Gibbs and Detective Vincent executed the search warrant. The officers knocked on the door and announced themselves. Upon entering the residence, they found a woman, later identified as Sonya Williams, in the front bedroom. Shortly thereafter, the other officers arrived at the residence with | ^Lawrence and the defendant. All three were advised of their Miranda rights. The officer asked Lawrence if he had any contraband or weapons in the house. Lawrence acknowledged that there was crack cocaine in the rear bedroom. The officers also found a fully loaded .45 caliber handgun and currency in the amount of fourteen hundred dollars underneath the mattress in the front bedroom. A black digital scale and a couple of boxes of sandwich baggies were also found in the residence. Lawrence was placed under arrest, and in a search incident to arrest, a key to the Baudin Street residence was found in his pants pocket. Williams was charged with possession of crack cocaine because individually wrapped pieces of cocaine were found in a coin purse in her possession.
Detective Ashton Gibbs, a member of the Gretna Police Department, was also a member of the narcotics task force. He was involved in the investigation and execution of the search warrant. Det. Gibbs testified that he observed Lawrence and the defendant leave the Baudin residence and enter a white Cadillac SUV. Lawrence and the defendant left the area. A short time later, the officer learned that Lawrence and the defendant had been detained pursuant to a stop. At that time, he, Det. Veit and Det. Vincent executed the search warrant. Upon entering the residence, the officers encountered a woman sitting in the front bedroom. The woman, Sonya Williams, was detained and later arrested for possession of cocaine. The other officers arrived with Lawrence and the defendant. Det. Veit asked Lawrence if he had any drugs in the residence. Lawrence showed them that there was cocaine in the rear bedroom. Det. Gibbs field tested the substances, which tested positive for cocaine. A handgun and 14fourteen hundred dollars were found in the front bedroom. A digital scale and sandwich baggies were also found in the residence.
Lt. Eric Covell, also a member of the Gretna Police Department and the task *683 force, was the supervisor for the investigation. En route to the Baudin Street address, the officer was informed that Lawrence and the defendant had left the residence in a white Cadillac Escalade. A decision was made to stop the vehicle pri- or to executing the search warrant. Lt. Coveil assisted the stop of the vehicle near the intersection of North Carrollton Avenue and Iberville Street. When the officer approached the vehicle, he observed both Lawrence and the defendant lean forward. He did not know if they were going for a weapon or attempting to hide something. Lt. Coveil went to the passenger side door and told the defendant to get out of the vehicle. After the defendant got out of the vehicle, Lt. Co-vell patted the defendant down for safety purposes. As the officer patted the defendant?s pants, a small plastic bag fell out of the defendant’s right pants leg and onto the ground. Lt. Covell stated that the substance appeared to be either cocaine or heroin. After a field test, the substance tested positive for heroin.[3] The defendant was arrested and handcuffed. Both Lawrence and the defendant were transported to the Baudin Street residence.
Sonya Williams testified that in September 2010, she lived at the Baudin Street residence with her son. She stated that she had known Lawrence for only about one month and that he did not live with her. However, she admitted that Lawrence had keys to the house. Williams testified that on September 17, 2010, |5she was lying in bed, watching television, when the police entered her home. They told her they were looking for Lawrence. The police took her coin purse and found the cocaine in her purse. She acknowledged that she was in possession of cocaine. Williams admitted that she pled guilty to the possession charge and had been sentenced to five years. Williams denied that she or Lawrence made any statements to the police. She also denied that the defendant was with Lawrence at the Baudin Street residence when Lawrence left the house.
A review of the record for patent errors reveals that the trial court sentenced the defendant prior to ruling on the motion for new trial. The sentencing transcript reveals that the defendant filed an oral motion for new trial after the defendant was adjudicated a multiple offender and resen-tenced under the multiple bill.
La.C.Cr.P. art. 873 requires that the trial court wait twenty-four hours after overruling a motion for a new trial to sentence a defendant. Specifically, La. C.Cr.P. art. 873 provides: “[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.”
Despite the fact that the court failed to abide by the twenty-four hour waiting period prescribed by La.C.Cr.P. art. 873, the defendant did not challenge his sentence on appeal. This Court has held that when a defendant does not challenge his sentence on appeal, any failure to abide by sentencing delays pursuant to La.C.Cr.P. art. 873 is harmless error. State v. Collins, 584 So.2d 356, 359 (La.App. 4 Cir.1991); State v. Boyd, 2008-0659, pp. 7-8 (La.App. 4 Cir. 11/12/08), 999 So.2d 40, 44; see also, State v. White, 404 So.2d 1202, 1204 (La.1981).
The trial court also committed another patent error when it stated that the *684 defendant’s sentence was to be served without benefit of parole. La. R.S. 15:529.1 1 (-provides that a sentence under the multiple offender statute is to be served without benefit of probation or suspension of sentence, but it does not preclude parole. Also, La. R.S. 40:966(C)(1), the underlying statute, does not prohibit parole. Thus, the defendant’s sentence should be amended to delete the prohibition of parole.
In his sole assignment of error, the defendant argues that the trial court erroneously denied his motion to suppress evidence. The defendant contends that the police officer had no reasonable basis to conduct a pat-down.
It is well-settled that an appellate court should review a trial court’s ruling under a deferential standard with regard to factual determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 2009-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751; State v. Hampton, 98-0331, p. 18 (La.4/23/99), 750 So.2d 867, 884. Moreover, a trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. State v. Wells, 2008-2262, p. 4 (La.7/6/10), 45 So.3d 577, 580. In reviewing a denial of a motion to suppress, an appellate court is not limited to the evidence adduced at a suppression hearing, but may consider all pertinent evidence adduced at trial. State v. Adams, 99-2123, p. 4 (La.App. 4 Cir. 1/24/01), 779 So.2d 113, 117.
In Louisiana, a police officer “may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” La.C.Cr.P. article 215.1(A); see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Once a person is stopped pursuant to pursuant to Article 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B); see also United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881.
In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts look at the totality of the circumstances, allowing officers to make inferences from and deductions about the cumulative information available to them based on their own experience and specialized training. U.S. v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002). An officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts were reasonable. State v. Sylvester, 2001-0607, p. 5 (La.9/20/02), 826 So.2d 1106, 1109; State v. Parker, 97-1994, p. 6 (La.App. 4 Cir. 12/9/98), 723 So.2d 1066, 1068.
In the present case, the officers had reasonable cause to stop Lawrence’s vehicle. The officers had a reasonable belief that Lawrence was trafficking heroin and knew that he used his vehicle during the sales. The defendant does not contest that the officers had reasonable cause to stop the vehicle. He contends that because he was not the target of the investigation, the officer had no reasonable basis to conduct a pat down search.
However, Lt. Covell testified that when the officers stopped the vehicle, both Lawrence and the defendant leaned forward in their seats, suggesting the possibility that they were reaching for a weapon or trying *685 to hide something. The officer stated that he asked the defendant to exit the vehicle and then conducted a pat down for safety. The officer noted that many times, those involved in narcotics trafficking also have weapons. As the defendant was seen exiting the Baudin | ^Street residence with Lawrence, the officers were reasonable in their belief that the defendant may have also been involved in narcotics trafficking. Upon conducting the pat down search, the packet of heroin fell out of the defendant’s pant leg and onto the ground.
The courts have consistently upheld an officer’s decision to conduct a safety pat down. In State v. Cure, 2011-2238, pp. 4-7 (La.7/2/12), 93 So.3d 1268, 1270-72, the Supreme Court discussed a police officer’s ability to conduct such pat downs.
We further agree that as part of the stop, Detectives Bagneris and Rocca-forte had the authority to order both the driver and the passenger to step out of the car, even assuming that they lacked any particularized and articulable basis for believing that the occupants posed a risk to their safety. See [Pennsylvania v.] Mimms, 434 U.S. [106,] at 110-11, 98 S.Ct. [330] at 333[, 54 L.Ed.2d 331 (1977) ] (“[W]e have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile.... Against this important interest, we are asked to weigh the intrusion into the driver’s personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as de minimis.”)-, Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997) (‘While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out [during a routine traffic stop], the additional intrusion on the passenger [by extending the rule of Mimms to passengers as well as drivers] is minimal.”); see also 4 Warren R. LaFave, Search and Seizure, § 9.2(d) (4th ed. 2004) (“[0]rdering a suspect out of a car, which the Supreme Court has approved even with respect to a routine traffic stop, is a generally permissible tactic in connection with Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] stops of vehicles.”) (citing Mimms; footnotes omitted). Mimms and Wilson are avowedly bright-line rules, see Wilson, 519 U.S. at 413, n. 1, 117 S.Ct. at 885 (“[T]hat we typically avoid per se rules concerning searches and seizures does not mean that we have always done so; Mimms itself drew a bright line, and we believe the principles that underlay that decision apply to passengers as well.”), and they reflect the premise that “ ‘[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.’ ” Wilson, 519 U.S. at 414, 117 S.Ct. at 886 (quoting Michigan v. Summers, 452 U.S. 692, 702-03, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981)) (footnote omitted).
* * * * * *
|flMoreover, given the “inordinate risk confronting an officer as he approaches a person seated in an automobile,” Mimms, 434 U.S. at 110, 98 S.Ct. at 333, and given also that “ ‘[c]ertainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties’ ” Id. (quoting Terry, 392 U.S. at 23, 88 S.Ct. at 1881), we agree with the trial judge that apart from any search-incident rationale, it was objectively reasonable for Detective Roccaforte to order defendant’s hand unclenched to protect not only himself during the investigation of a nar- *686 cotíes offense but also Detective Bagner-is, who was preoccupied with the driver of the Camry. The relevant question with respect to self-protective searches conducted by the police “is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing,” but whether “a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of other [persons] was in danger.” State v. Boyer, 2007-0476, p. 20 (La.10/16/07), 967 So.2d 458, 471 (citations omitted); cf. Sylvester, 2001-0607 at 6, 826 So.2d at 1109 (“[T]he officer’s concern for his own protection and that of his partner justified ordering defendant to open his fist.”) (citing United States v. Moore, 235 F.3d 700, 704 (1st Cir.2000) (“Weapons such as knives and razors can ... be concealed inside a closed fist.”)).
In Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), two police officers stopped the defendant’s vehicle to issue a traffic summons for driving with an expired license plate. One of the officers asked the defendant (the driver and only occupant) to step out of the automobile. As the defendant stepped out of the vehicle, the police officer noticed a bulge under the defendant’s jacket. Suspecting that the bulge might be a weapon, the officer frisked the defendant and discovered that the bulge was a loaded revolver. Reversing the state court’s decision that the officer’s ordering the defendant out of the car was an impermissible seizure of the person, the Court held that “once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment’s proscription of unreasonable searches and seizures.” Id. at 111 n. 6, 98 S.Ct. at 333 n. 6. The Court recognized that the inquiry in any Fourth Amendment analysis is whether the search or seizure was reasonable under all of the circumstances, noting 11flthat the determination of reasonableness requires a balancing of the public interest and the individual’s right to be free from arbitrary governmental interference.
In regards to the public interest factor, the Court determined that the police officer’s ordering the defendant out of his car in order to establish a face-to-face observation diminished the substantial possibility that the defendant might have made unobserved movements and reduced the likelihood of an attack on the officer. Then turning to the defendant’s privacy interest, the Court stated that because the defendant had been lawfully detained, the officer’s ordering the defendant out of the car was an incremental intrusion into the defendant’s personal liberty which “can only be described as ‘de minimis.’ ” Id. at 111, 98 S.Ct. at 333. The Court concluded that this de minimis intrusion could not prevail over the justified concern for the officer’s safety under the circumstances.
In State v. Cure, supra, the defendant, the passenger in the vehicle, was asked to step out of the vehicle. When the defendant got out of the vehicle, the police officer noticed that the defendant’s hand was clenched. The officer requested the defendant to open his hand, and when he did, the officer found two packets of heroin in the defendant’s hand. The Court noted that the officer’s request was reasonable in light of safety concerns during a narcotics investigation.
Similarly, in the present case, the defendant was asked to step out of the vehicle. Lt. Covell testified that he conducted a safety pat down because he had seen the defendant leaning forward in the vehicle when the officers stopped the car. *687 The officer knew that the driver was suspected of narcotics trafficking and that weapons are commonly found with narcotics. Thus, the officer had a reasonable basis for believing that the defendant could be armed and was leaning forward in an attempt to reach for a weapon. The officer was justified in |n conducting the pat down for safety. The trial court did not err when it denied the motion to suppress.
This assignment is without merit.
For the reasons stated above, we affirm the defendant’s conviction. We amend the defendant’s sentence to delete the prohibition of parole and, as amended, affirm the sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.

. Co-defendants Jonathan Lawrence and Sonya Williams were also charged in the bill of information. Lawrence was charged with possession with the intent to distribute cocaine and possession of a handgun by a convicted felon. Lawrence was tried with the defendant, Vonzo Magee. The jury found Lawrence guilty of possession of cocaine and attempted possession of a handgun by a convicted felon. He was sentenced to five years at hard labor on the cocaine possession charge and seven and one half years at hard labor on the handgun charge. Lawrence was multiple billed on the cocaine charge, to which he pled guilty. His original sentence was vacated, and he was resentenced to five years at hard labor. Williams was charged with possession with the intent to distribute cocaine and possession of a handgun by a convicted felon. The cocaine charge was amended to possession of cocaine, to which she pled guilty. She was sentenced to five years at hard labor. The handgun charge was dismissed. Williams was multiple billed on the cocaine charge, to which she pled guilty. Her original sentence was vacated, and she was resentenced to five, years at hard labor.

. Det. Veit was the only officer who testified at the suppression hearing. He testified that he obtained a search warrant for the Baudin address after being informed by a confidential informant that Jonathan Lawrence was selling heroin from that residence. A controlled purchase of heroin from Lawrence was conducted. Surveillance of the residence was set up prior to the controlled purchase. Another police officer. Detective Ashton Gibbs, followed Lawrence from the Baudin Street residence to the site of the controlled purchase. Det. Gibbs continued the surveillance and followed Lawrence back the Baudin Street residence after the controlled purchase. Det. Veit testified that the substance purchased during the controlled buy tested positive for heroin. The rest of the officer’s testimony at the suppression hearing is the same as his trial testimony.

. It was stipulated at trial that if William Gilbin, of the New Orleans Police Department Crime Lab, was called to testify, he would state that the substance found on the defendant tested positive for heroin.