STEPHEN J. WINDHORST, Judge.

hWRIT GRANTED IN PART; DENIED IN PART

In this writ application, the State challenges the trial court’s ruling granting defendant’s motion to suppress statement and evidence as it pertains to the charge of possession of an unregistered firearm. For the reasons that follow, we grant the State’s application in part and deny the application in part.
DefendanVrespondent, Matthew John, has been charged with operating a motor vehicle while intoxicated, in violation of La. R.S, 14:98, and possession of an unregistered firearm, in violation of La. R.S. 40:1785. Defendant filed a Motion for Preliminary Examination, and a Motion;o Suppress Evidence and Statement. After a hearing, the trial court found probable cause for the offense of operating a motor vehicle while intoxicated, and granted defendant’s motion to suppress evidence and statement concerning the offense of possession of an unregistered firearm.

Hearing of Motions to Suppress

The following facts were adduced at the hearing on the motion to suppress:
Deputy Cody Soileau, employed by the Louisiana Department of Wildlife and Fisheries at the time of the alleged offenses, testified that he observed defendant’s vehicle stuck in the sand on Elmer’s Island Beach, so he and his partner, Agent Doug Danna, approached to render aid As he and Agent Danna stopped to assist defendant, he noticed defendant’s speech was slurred, he had bloodshot and watery eyes, and smelled of alcohol. Deputy Soi-leau asked defendant to walk to the front of his state vehicle at which time he observed that | ¡¡defendant was “stumbling and had unsure balance.” Suspecting defendant to be under the influence, Deputy Soileau administered a horizontal gaze nystagmus (“HGN”) test. According to Deputy Soileau’s assessment, the results of the test indicated a “lack of smooth pursuit, [and] ... maxim am deviation in both eyes, onset prior to 45 and also vertical nystagmus.” At some point, defendant advised Deputy Soileau that he had been drinking. Deputy Soileau testified that defendant had not been advised of his Miranda[1] rights prior to making the statement, and was not warned until after he was transported to the Grand Isle Police Department for chemical testing since defendant refused to perform any more field sobriety tests.
Deputy Soileau testified that in his experience, a DWI suspect does not have to be advised of his Miranda rights until an officer starts asking him “test questions” from the DWI rights form.
While on the scene, Deputy Soileau testified that Agent Danna asked defendant if he had any weapons in his vehicle, to which defendant responded that he had a sawed-off shotgun in his backseat. The gun was located and seized. Deputy Soi-leau testified that he did not recall when defendant was placed in handcuffs, but *200 believed it was sometime after they seized the weapon. Defendant was then transported back to the police department where he was advised of his Miranda rights and his rights related to chemical testing. Defendant acknowledged that he understood his rights, and refused to submit to a breathalyzer test. Defendant was later transported to the Jefferson Parish Correctional Center.
On cross-examination, Deputy Soileau testified that he and Agent Danna were both armed and standing with defendant in front of their state vehicle at the time they conducted the HGN test. Specifically, Deputy Soileau testified that they were standing approximately 20 to 25 feet away from defendant’s vehicle. Deputy Soileau testified that, at the time they were performing the test, defendant was | ^detained and not free to leave. Deputy Soileau admitted that defendant was under arrest but that defendant was not advised of his Miranda rights prior to Agent Danna questioning him.
Deputy Soileau admitted that after defendant was arrested, Agent Danna asked him if he had any weapons in his vehicle, and that defendant advised them that he had a sawed-off shotgun in his backseat. Deputy Soileau further testified that after defendant walked to the front of their state vehicle to perform the HGN test, defendant never again had access to his own vehicle which was parked approximately 20 to 25 feet away.
On re-direct examination, Deputy Soi-leau testified that the purpose of asking a suspect whether they have any weapons in their vehicle is for officer safety.

Suppression of the Statement

In this writ application, the State does not dispute the finding that defendant was not free to leave and in custody at the time Agent Danna asked defendant whether there were any weapons in his vehicle. Rather, the State argues that Miranda only prohibits the admission of statements which are the product of a custodial interrogation. And in this instance, the State contends that the question asked by Agent Danna was not an “interrogation” because it was not a question that the officers should have known was likely to elicit an incriminating response. The State further submits that the question about weapons in the vehicle concerned an activity that is not illegal and was unrelated to the crime under investigation (DWI).
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he knowingly and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, | inducement or promises. La. R.S. 15:451; State v. Mollette, 08-138 (La.App. 5 Cir. 11/25/08), 2 So.3d 461, 467, writ denied, 09-0155 (La.10/16/09), 19 So.3d 472; State v. Franklin, 03-287 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817. The police are required to explain Miranda’s special procedural safeguards to the suspect before initiating a custodial interrogation that deprives the suspect of his freedom of action. State v. Payne, 01-3196 (La.12/4/02), 833 So.2d 927, 934. A statement obtained from the defendant by direct or implied promises, or by the exertion of improper influence must be considered involuntary and, therefore, inadmissible. State v. Gregory, 05-628 (La.App. 5 Cir. 3/28/06), 927 So.2d 479, 483.
The special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into *201 custody, but rather where a suspect in custody is subjected to interrogation. Rhode Island v. Innis, 446 U.S. 291, 800, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). “Interrogation,” as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself. Id. at 300-01, 100 S.Ct. 1682. That is to say, the term “interrogation” under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Id. An incriminating response, whether inculpatory or exculpatory, is that which the prosecution may seek to introduce at trial. Id. at 302, 100 S.Ct. 1682.
Here, Deputy Soileau admitted relator was under arrest at the time he was questioned. Furthermore, relator was “interrogated” within the meaning of Miranda when Agent Danna expressly questioned him about weapons in his vehicle, inviting an incriminating response from defendant. Defendant’s admission regarding the possession of a shotgun, which turned out to be unregistered, appears to have been obtained in violation of defendant’s right against self-incrimination. 1 ¡¿Furthermore, while Deputy Soileau testified that the purpose as asking a suspect whether they have any weapons in their vehicle is for officer safety, he also admitted that they were 20 to 25 feet away from the vehicle.
Thus, because defendant was not advised of his Miranda rights prior to express questioning that took place while defendant was in custody, and where officer safety was not at issue, we find that the trial court was correct in granting defendant’s motion to suppress statement.

Suppression of Miranda-tainted Evidence

The State also argues the trial court erred in suppressing the shotgun because the physical fruits of an “unwarned” statement are not subject to suppression, relying on United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). In Patane, the Court held and reaffirmed that the failure to give a suspect the warnings prescribed by Miranda, does not require suppression of the physical fruits of a suspect’s unwarned but voluntary (uncoerced) statement.
The shotgun in this case was recovered in defendant’s vehicle as a direct result of defendant’s un-Mirandized statement. When a confession is held involuntary, the fruits of the tainted confession, in addition to the confession itself, must be excluded from a criminal proceeding. Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) However, in contrast to exclusion of fruits of an involuntary confession, the United States Supreme Court has taken the position that exclusion of the fruits of an unwarned, Miranda-tainted statement is not necessary, nor required, in all instances.
Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974),[2] noted a distinction between police conduct that directly infringed on a defendant’s right against compulsory self-incrimination and police conduct that violated only the prophylactic rules developed to protect that right. Concluding that the |fiexclusion of fruits of an unwarned statement need only occur when the rationale of deterrence of police misconduct would be served, the *202 Court ruled that the testimony of a witness who was discovered through the unwarned, but uncoerced and voluntary interrogation was admissible.
In Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) the Supreme Court reaffirmed its finding that a procedural Miranda violation differs from a Fourth Amendment seizure violation, and therefore the “fruit of the poisonous tree” doctrine is not applicable to Miranda warning violations.[3]
Thereafter, in Patane, the Court found that federal constitutional law does not require the exclusion of physical evidence obtained by using information in a statement itself inadmissible because it was tainted by a violation of the Miranda requirements.[4] The Patane opinion states that, unlike the Fourth Amendment’s bar on unreasonable searches, the self-incrimination clause is “self-executing,” meaning that those “those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial.” Patane, 542 U.S. at 640, 124 S.Ct. 2620, citing Chavez v. Martinez, 538 U.S. 760, 769, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003). “The exclusion of unwarned statements ... is a complete and sufficient remedy” for any perceived Miranda violation. Patane, 542 U.S. at 641-42, 124 S.Ct. 2620 (citing Chavez, 538 U.S. at 790, 123 S.Ct. 1994).
There is, therefore, a clear distinction between exclusions which are based on the Fourth and Fifth Amendment infractions. When a statement leads to acquisition of evidence, and the statement is unwarned, but uncoerced and voluntary, the statement itself is excluded but the evidentiary fruits are not. That is especially so in this case, where the statement was not only voluntary, but was in |7response to a question asked by police (whether there were any weapons in the truck) which was unrelated to the offense being investigated (DWI), and which the officers had no reason to believe was likely to evoke an incriminating response.
The development of jurisprudence clarifying and limiting the scope of Miranda commenced shortly thereafter with Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). On the issue before us, federal jurisprudence since Tucker in 1974 has consistently moved toward allowing admission of evidence obtained as a result of a Miranda-tainted, inadmissible statement, when the statement leading to that evidence is voluntary, uncoerced, and usually unintentional on the part of police, despite the statement itself being inadmissible.
United States v. Mendez, 27 F.3d 126 (5th Cir.1994), held that although the prophylactic rule of Miranda was violated, there was no constitutional violation where the officers’ tactics in interrogating the defendant were not coercive and, therefore, the nontestimonial evidence could not be suppressed. United States v. Barte, 868 F.2d 773, 774 (5th Cir.1989), cert. denied, 493 U.S. 995, 110 S.Ct. 547, 107 L.Ed.2d 548 (1989), held, “A mere violation of Miranda’s ‘prophylactic’ procedures does not trigger the fruit of the *203 poisonous tree doctrine. The derivative evidence rule operates only when an actual constitutional violation occurs, as where a suspect confesses in response to coercion.” United States v. Bengivenga, 845 F.2d 593, 600 (5th Cir.1988), cert. denied, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988), held, “A violation of Miranda rules, rules fashioned to secure the Fifth Amendment’s privilege during custodial interrogation, necessitates only the exclusion of testimonial evidence from the prosecution’s case in chief. The ... nontestimonial physical evidence ... would not be excludable even if they had been obtained in violation of Miranda.” United States v. Cherry, 794 F.2d 201, 208 (5th Cir.1986), cert. denied, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987), held that a Miranda violation did not result in a violation of the defendant’s Fifth | ¡Amendment right against self-incrimination where this statement was voluntary and, therefore, the murder weapon was not to be suppressed as “fruit” of the violation.
We therefore find that the trial court erred in finding that the gun seized from defendant’s car should be suppressed pursuant to the “fruit of the poisonous tree doctrine.”

Suppression of Evidence based on Fourth Amendment

In his opposition to the State’s writ application, defendant raises a Fourth Amendment issue, arguing that the seizure of the shotgun was not the sole result of his statement, and therefore, not necessarily “fruit of the poisonous tree.” Rather, defendant contends that the evidence was obtained from a separate improper and warrantless search of his vehicle without probable cause. However, the seizure of defendant’s shotgun from his vehicle appears to have been a direct result of defendant’s un-Mirandized statement, despite defendant’s contention that the “fruit of the poisonous tree” doctrine is inapplicable and that the seizure of the shotgun was an independent occurrence.
Further, the weapons question is typically asked for officers’ safety. Even if the officers’ safety concern was only slight in this case, the officers had an interest in assuring that the truck, which was located on the teach in the sand, was made safe for and from others until it was removed.[5] Thus, we find no unreasonable search and seizure.
Lastly, defendant asserts in his reply brief that his vehicle was towed and that the officers did not first comply with the procedure of La. R.S. 32:667, which would have allowed him to call someone to retrieve his vehicle. According to defendant, the failure of the officers to comply with La. R.S. 32:667 warrants |9suppression of the shotgun. However, these assertions by defendant show that the presence of the shotgun would have been “discovered” when the vehicle was towed pursuant to an inventory search of the vehicle, one of the narrow exceptions to the warrant requirement.[6] Contrary to defendant’s assertions, a violation of La. R.S. 32:667 does not result in the suppression of evidence. Rather, La. R.S. 32:667(A)(4) provides that “[i]f a law enforcement officer violates the provisions of this paragraph [ie., refuses to allow the arrestee to call someone to retrieve his vehicle], his employing agency rather than the arrestee shall be responsible for the payment of any towing charges *204 incurred.” Thus, the shotgun would inevitably have been discovered, and therefore its admission into evidence does not violate defendant’s Fourth Amendment rights against illegal search and seizure.
For the above discussed reasons, we grant the State’s writ application for writ in part, and rule that the trial court committed error in suppressing the shotgun seized from defendant’s truck. We deny the writ in part finding no error in the ruling suppression of the statement made by defendant.
JOHNSON, J., concurs with reasons.
LILJEBERG, J., dissents in part: concurs in part.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The Miranda violation in Tucker occurred before Miranda was decided, however the defendant’s trial and conviction took place after, and therefore the United States Supreme Court found that Miranda was applicable.

. In Elstad, the Court found that a defendant’s confession made after proper Miranda warnings and valid waiver of rights need not be suppressed merely because it followed an earlier voluntary but unwarned admission.

. In Patane, the officer asked about a handgun after an incomplete recitation of Miranda rights. After questioning revealed its location, the officers retrieved the handgun later admitted into evidence.

. It is uncertain whether the officers had the truck removed from the beach after the arrest. Because the State bore the burden of proof, we do not assume they did, and therefore conduct; there was no inventory search.

. State v. Escoto, 09-2581 (La.7/6/10), 41 So.3d 1160, 1163.