James F. McKAY III, Chief Judge.
| Richard Boyles appeals his guilty plea to being a convicted felon in possession of a firearm and his sentence as a multiple offender, contending that the trial court erred by denying his motion to suppress the evidence. For the reasons set forth below, we affirm his guilty plea and sentence.

STATEMENT OF THE CASE

By bill of information filed on October 29, 2013, the State of Louisiana charged Richard Boyles with being a convicted felon in possession of a firearm. Boyles appeared in court on November 4, 2014, pled not guilty to the charge, and filed several motions, including a motion to suppress the evidence. The court heard the matter and denied the motion on January 16, 2014. Boyles sought relief in this Court from the trial court’s denial of his suppression motion; this Court denied writs. State v. Boyles, unpub. 2014-0175 (La.App. 4 Cir. 2/28/14). The Supreme Court also denied Boyles’ subsequent writ. State v. Boyles, 2014-0446 (La.3/10/14), 134 So.3d 1183. On April 14, Boyles withdrew his prior plea of not guilty and pled guilty as charged, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal the court’s ruling on his motion to suppress the evidence. Boyles was sentenced to serve ten years at hard labor without benefit of |2parole, probation, or suspension of sentence. The State filed a multiple bill, charging Boyles as a second offender based upon a different prior offense than that listed in the bill of information in this case. After a hearing on the multiple bill, the court found Boyles to be a second offender. The court vacated the original sentence and sentenced Boyles to serve ten years at hard labor without benefits. Boyles’ appeal followed.

STATEMENT OF FACTS

Because the appellant pled guilty, the only facts in the case were adduced at the January 16, 2014 suppression hearing.
Officer Kelli Dunaway testified that she. arrested the appellant on September 3, 2013 at the main branch of the public library. She had received a dispatch concerning a suspect who had argued with a woman and pulled a gun at a nearby Wal-greens, and the suspect was described as wearing a pink shirt and black pants and carrying a gun. Officer Dunaway spotted the appellant, who was wearing a pink shirt and dark pants, which she indicated fit'the description given by dispatch. She called for backup, and when another officer arrived, the other officer frisked the appellant and found a gun. She denied that the appellant made any statements.
On cross-examination, Officer Dunaway testified that although the altercation with the woman occurred sometime in the morning, she did not encounter the appellant until approximately 1:30 p.m. She did not know who reported the altercation; she merely heard the description given by dispatch and then spotted the appellant. She stated that she saw him walk into the public library, which she estimated was six to seven blocks from the Walgreens where the altercation occurred. The officers stopped and frisked the appellant inside the library.
|3The State introduced evidence of the appellant’s prior conviction from 2010 for attempted simple robbery.

ERRORS PATENT

A review of the record reveals no errors *1173 patent.[1]

DISCUSSION

By his sole assignment of error, the appellant contends that the trial court erred by denying his motion to suppress the evidence.
At the conclusion of the testimony at the suppression hearing, defense counsel argued that the evidence should have been suppressed because the anonymous tip concerning the suspect contained only a description of the suspect; it did not contain either predictive information or even the location where the suspect could be found. In response, the prosecutor argued that the “tip” here gave the officers reasonable cause to believe that the appellant, who matched the clothing description, was armed, and they could lawfully detain and frisk him, thereby finding the gun. The court agreed, stating: “I think Officer Dunaway articulated sufficient, specific factors that allowed her, in fact, mandated that she take further investigative steps in trying to apprehend someone that was armed and possibly dangerous.”
Because the officers seized the gun without a warrant, the State had the burden of showing any evidence seized in the absence of a warrant was lawfully seized. See La.C.Cr.P. art. 703D; State v. Wells, 2008-2262 (La.7/6/10), 45 So.3d 577. It is well-settled that an appellate court should afford great weight to a 14trial court’s findings of fact based on the credibility of evidence, but its legal findings are subject to a de novo standard of review. State v. Thompson, 2011-0915, p. 13 (La.5/8/12), 93 So.3d 553, 563.
The appellant contends that there was no reasonable suspicion to stop him, nor did the officers have a basis to frisk him. He also asserts that the State provided no evidence to show that the officer who performed the frisk, who did not testify, immediately knew that the object he felt during the frisk was a gun. Pursuant to La. C.Cr.P. art. 215.1, an officer may stop a person and question him if the officer has reasonable suspicion that the person has committed or is about to commit an offense. See State v. Temple, 2002-1895 (La.9/9/03), 854 So.2d 856. Reasonable suspicion is less than the probable cause needed to arrest a defendant; an officer “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); Temple, at p. 4, 854 So.2d at 859-860. As this Court stated in State v. Robertson, 2013-1403, p. 7 (La.App. 4 Cir. 4/9/14), 136 So.3d 1010,1014:
The threshold inquiry under Article 215.1 is the reasonableness of the officer’s suspicion that a person has committed, will commit or is committing an offense. As this Court reiterated in State v. Williams, 07-0700, p. 11 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101,1111 (internal citations omitted), “ ‘reasonable suspicion’ to stop is something less than probable cause for an arrest; a reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights.” See also State v. Harris, 11-0941, p. 8 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 911. “In assessing the reasonableness of an investigatory stop, the *1174 court must balance the need for the stop against the invasion of privacy it entails” and consider the totality of the circumstances “in determining whether reasonable suspicion exists.” Williams, 07-0700, p. 11, 977 So.2d at 1111. An “officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable,” and “[d]eference should be given to the experience |5of the officers ... present at the time of the incident.” Id., 07-0700, pp. 11-12, 977 So.2d at 1111.
A reviewing court must look at the totality of the circumstances to determine if an officer has reasonable suspicion to stop a suspect. Temple, supra p. 5, 854 So.2d at 860. As noted by the Court in State v. Morgan, 2009-2352, p. 4 (La.3/15/11), 59 So.3d 403, 406: “Although reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment requires some minimal level of objective justification for making the stop. [United States v.] Sokolow, 490 U.S. [1] at 7, 109 S.Ct. [1581] at 1585 [104 L.Ed.2d 1 (1989) ].” As per Morgan, factors to be considered include the time of day and location of the stop, as well as the defendant’s actions prior to the stop. Id.
The appellant first argues that the State did not show that the officers had reasonable suspicion to believe that he had committed a crime. As he notes, Officer Dunaway merely testified that she received a dispatch concerning the clothing description of a man who had an altercation with a woman that morning at a Wal-greens, during which he pulled a gun. The officer testified that she saw the appellant, who matched the description, walking into the public library. The officer called for backup, and when the other officer arrived, they went inside the library, detained the appellant, and then the other officer frisked him and found the gun.
As he did at the suppression hearing, counsel cites Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), where the Court held that an anonymous tip, which included only a description of someone who would be at a certain place and had a gun, did not provide reasonable suspicion to detain the defendant because it provided no predictive information. In so finding, the Court distinguished Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), where the Court upheld an investigatory stop of a .woman based on a tip that included not only her description but also predictive information that included her movements. The J.L. Court stated: “Knowledge about a person’s future movements indicates some familiarity with that person’s affairs,” 529 U.S. at 271, 120 S.Ct. at 1379. However, the Court noted that the fact scenario in White, where the tip was corroborated by the officers’ observation of the predictive information, was “borderline.” Id. Because there was no predictive information as to the suspect’s movements, the anonymous tip alone, without any observation of any criminal activity by the officers themselves, did not give them reasonable suspicion to stop the defendant. Id.
In addition to Florida v. J.L., the appellant also cites various cases where this Court and the Supreme Court held that a tip, by itself without predictive information, failed to give officers reasonable suspicion to stop a suspect. In State v. Derouen, 2000-1065 (La.App. 4 Cir. 5/23/01), 790 So.2d 88, officers received a tip from a confidential informant (“C.I.”) concerning where the defendant kept marijuana that he sold. The officers followed the defendant to various places, including a school parking lot, where he remained parked for
*1175 a while. This Court found that, despite the fact that the defendant had prior drug arrests, the tip by itself did not give the officers reasonable suspicion to stop him. In so ruling, this Court relied on State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, also cited by the appellant, where officers received an anonymous tip concerning drug sales in a housing project. The tip included descriptions of the seller and the vehicle that he used, as well as the location where the vehicle would be parked when the seller was not delivering drugs. Officers found the car at that site and followed it when it Uleft. When the car stopped, the driver (the defendant) exited, and he matched the description given in the tip. The Court found that because the tip did not contain any predictive information, the mere fact that the defendant, his car, and the location were in conformance with the tip was not sufficient to give the officers reasonable suspicion to stop him. The Court noted that the officers could have set up a surveillance of the described area in order to corroborate the allegation of drug sales, which would have then given them reasonable suspicion to stop the defendant. See also State v. Herrington, 2007-0070 (La.App. 4 Cir. 6/20/07), 961 So.2d 1271 (the fact that an anonymous tip gave a partial name and clothing description that matched the defendant, whom the officer knew, did not give the officer reasonable suspicion in the absence of any predictive information or corroboration); State v. Boson, 99-1984 (La.App. 4 Cir. 1/17/01), 778 So.2d 687 (the fact that the defendant exited a motel from which the officers had received complaints of drug sales was not sufficient to stop him); State v. Young, 99-2120 (La.App. 4 Cir. 9/6/00), 770 So.2d 7 (a tip from an untested C.I. concerning drug sales by a described man on a bike at a certain location was not sufficient to provide reasonable suspicion where officers merely found the defendant, who fit the description and was on a bike, talking to two people). In Young, this Court held that because there was no information concerning the reliability of the C.I., the tip was to be equated with an anonymous tip, which has much less reliability than one given by a known tipster.
By contrast, in State v. Guillot, 2012-0726 (La.App. 4 Cir. 4/17/13), 115 So.3d 624, this Court found reasonable suspicion to stop the defendant. The police received a tip from a concerned citizen of drug sales by “Vinnie” at a certain location. The tip also included a description of Vinnie and his car. An officer set 18up a surveillance and saw the defendant, who matched the description in the tip, drive up in a car that also matched a description given in the tip. He and a companion exited the car and walked toward a group of people standing on the corner. The officer walked up to the group and advised the people of the investigation and of their Miranda rights. The defendant, who was nervous, identified himself, including his nickname, Vin-nie. This Court found reasonable suspicion to stop the defendant, distinguishing Robertson on the basis that the tip, from a concerned citizen, was more reliable than the anonymous tip in Robertson. This Court noted that the defendant’s approach of the group also gave the officer reasonable suspicion. This Court stated: “At that point, the officer was objectively justified in pursuing a means of investigation that would quickly confirm or dispel his suspicions.” Guillot, at p. 8, 115 So.3d at 629.
The cases cited by the appellant are distinguishable from the instant case in that those cases involved “anonymous” tips that led the police to stop the defendants. Here, although the appellant tries to equate the dispatch with an anonymous tip, Officer Dunaway testified that the description was broadcast over dispatch *1176 based upon the earlier assault at the drugstore hours earlier and several blocks away from the library where she observed the appellant. While Officer Dunaway could not say who actually gave the description to dispatch, it appears that the description was the result of the investigation of the incident, not part of an anonymous tip. Thus, the description was much more reliable than that of an anonymous tip, requiring less corroboration than an anonymous tip required.
Officer Dunaway ' observed a person matching the description of a man who waved a gun at a woman hours earlier and six to seven blocks away from where she saw the appellant. The court noted that these circumstances gave Officer IflDunaway, and by extension the backup officer, reasonable suspicion to stop him, and in fact mandated that they investigate the appellant for the public’s safety to determine if he was carrying a dangerous weapon. Given the relative nearness of the time and vicinity of the crime to where the officers detained him, we conclude that the trial court did not err in its finding of reasonable suspicion to detain the appellant.
Once the officers had reasonable suspicion to stop the appellant, they could also frisk him. See La.C.Cr.P. art. 215.1(A), which allows an officer to frisk a suspect during an investigatory stop if the officer reasonably believes that the suspect is armed. See also State v. Magee, 2012-0151 (La.App. 4 Cir. 3/6/13), 110 So.3d 680; State v. Lazard, 2008-0677 (La.App. 4 Cir. 12/10/08), 2 So.3d 492. Here, the dispatch included the information that the suspect was armed. Thus, the other officer could lawfully frisk the appellant, during which he discovered the gun in the appellant’s possession.
Lastly, the appellant argues that even if this Court upholds the detention and frisk, it should still suppress the gun because the State did not show that it was immediately apparent to the officer who conducted the frisk that the object that he felt was a gun. The appellant refers to the “plain feel” exception to the warrant requirement, which comes into play when an officer has reasonable suspicion to stop a defendant; he has a basis for a frisk; and he discovers evidence during a frisk, during which it must be “immediately apparent” to the officer that the object that he discovers during the frisk is contraband or a weapon. State v. Banks, 2011-0903, p. 7 (La.App. 4 Cir. 3/21/12), 95 So.3d 1081, 1085; State v. Jones, 99-0861, p. 12 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38.
11nIn support of his argument that the “plain feel” exception does not apply here, appellant cites State v. Carter, 2013-1452 (La.App. 4 Cir. 12/19/13), 131 So.3d 479,[2] where this Court upheld the suppression of evidence. In Carter, we determined that although the officers had reasonable suspicion to stop the defendant and a basis to frisk him, there was no showing that it was immediately apparent to the officer who found a bag of drugs during a frisk of the defendant that the object he felt during the frisk was a bag of drugs.
We find Carter distinguishable from the present case in that the object on Carter’s person was a bag that could have contained anything. By contrast, here the officer frisked the appellant and found a gun, which is a much more recognizable object than a bulge that might contain drugs. Given the easily-recognizable nature of a gun, and the fact that the officers were advised that the suspect had brandished a gun earlier that day, we find that *1177 the “plain feel” exception is applicable to this case even though the officer who actually frisked and found the gun did not appear at the suppression hearing to testify that it was “immediately apparent” to him that the object that the appellant possessed was a gun.

CONCLUSION

For the foregoing reasons, we find no error on the part of the trial court in denying the appellant’s motion to suppress the evidence. Accordingly, we affirm the appellant’s guilty plea and sentence.
AFFIRMED.

. While the court suspended the fine required by La. R.S. 14:95.1, the court should not have imposed a fine because the appellant was sentenced as a multiple offender. See State v. Dickerson, 584 So.2d 1140 (La.1991); State v. Nora, 2013-0892 (La.App. 4 Cir. 6/18/14), 143 So.3d 1237. However, because the fine was suspended, there is no action necessary.

. Writ den. 2014-0013 (La.1/21/14), 130 So.3d 952.