STATE OF LOUISIANA         \*         NO. 2024-K-0169

VERSUS         \*         COURT OF APPEAL

JALEEL GREEN         \*         FOURTH CIRCUIT

        \*         STATE OF LOUISIANA

        \*

        \*

\* \* \* \* \* \* \*

**LOBRANO, J., DISSENTS AND ASSIGNS REASONS**

I respectfully dissent. I would grant the State's writ and reverse the district court's ruling suppressing the evidence. I find that the evidence seized during the search of Jaleel Green ("Defendant") was constitutionally obtained. The State's writ application reflects that police officers seized Defendant's concealed weapon based on reasonable suspicion and the derivative evidence recovered was incident to a lawful arrest. Accordingly, the district court erred when it suppressed the evidence and found no probable cause.

<b>STATEMENT OF THE CASE</b>

On October 17, 2023, the State filed a bill of information charging Defendant with possession of a firearm by a convicted felon; illegal carrying of a weapon while in possession of a controlled dangerous substance; and possession of a weapon with an obliterated serial number. On October 26, 2023, Defendant filed an omnibus motion for discovery; motion to preserve evidence; motion for suppression of statements, evidence and identification; and motion for a preliminary examination. On November 28, 2023, Defendant filed a motion to suppress statement and evidence. The district court conducted a hearing on the motion on January 17, 2024. Following the hearing, Defendant filed a supplemental motion to suppress and incorporated memorandum, and the State

1

filed a brief in opposition. On February 23, 2024, the court issued a written ruling granting the motion to suppress and finding no probable cause. The State notified the court of its intent to seek writs and the court set a return date of March 23, 2024. On March 22, 2024, the State timely filed its application, requesting expedited consideration given the pretrial conference set April 12, 2024 and trial scheduled April 19, 2024. On March 25, 2024, the State supplemented the application with bodycam video introduced at the hearing.

## STATEMENT OF THE FACTS

At the hearing on the motion, the State called Officer Patrick McFarlane, who testified that on August 15, 2023, he responded to a call for service at 837 Gravier Street. Upon arrival, McFarlane reviewed his notes from dispatch, which reflected that a possibly-armed subject had been seen inside the common areas of the apartment complex selling narcotics. Upon entering the complex, the officer encountered an individual matching the subject -- who had been described as a "black male with medium dreds with a mask on his head, also having a black t-shirt and blue swim trunks . . . and a strapped style bag." McFarlane also observed a distinctive bulge in the subject's waistband, which he "believed to be a firearm." The officer stopped the individual; introduced himself; and advised the subject of the reason for his presence. The State then introduced a clip of the bodycam video. McFarlane testified the video accurately depicted the encounter and the officer identified Defendant in the courtroom as the individual whom he stopped. McFarlane continued:

> Once he's placed handcuffs, at that point my move is to remove the firearm that I believe to be in his possession. Obviously, he already stated after asking him if he had a firearm on, that he had it on his person. I asked him where it was but I knew, based on my observation, where it was. I lifted up his shirt after a quick pat-down with my hand, felt the grip portion of the firearm, moved up his t-shirt and pulled out the firearm in a gingerly and safe way because of where it was pointed.

2

> At that point, I racked the slide and removed the magazine and rendered the firearm safe.

The officer clarified that he had initially arrested Defendant for illegal concealment of a firearm and that the subsequent search of his bag (which yielded bags of suspected marijuana, a pill suspected to be Xanax, and a digital scale with marijuana residue) was conducted incident to that arrest.

The State then introduced exhibits reflecting that field tests of the suspected contraband yielded positive results for THC, and in the case of the pill, opioids. Based on the test results and McFarlane's ensuing finding that Defendant was on parole, Defendant was booked with illegal carrying of a concealed firearm, possession of a firearm by a convicted felon, and illegal possession of a firearm while in the possession of narcotics.

A review of the bodycam video introduced at the hearing and provided to this Court reveals that it largely corroborates McFarlane's testimony. It depicts the officer's encounter with Defendant outside the building on Gravier Street. After Defendant was advised that he had been stopped because he matched the description given of an individual selling drugs in the complex, Defendant was asked if he was armed, and he responded, "I got my gun on me." When asked if he possessed a concealed carry permit, Defendant answered, "No, not on me." The officers then handcuffed Defendant; removed the gun from his waistband; Defendant stated that he carried the gun with him for protection; and another officer at the scene issued *Miranda* warnings. Defendant then requested multiple times that he be placed in the police unit. On the way to the car, McFarlane advised Defendant that when he encountered him, he "could see the bulge in [Defendant's] waistband" which was why he inquired if Defendant was armed.

## DISTRICT COURT RULING

3

The district court granted Defendant's motion to suppress, ruling as follows:

> This matter comes before the court on Defense Motion to Suppress Statements and Evidence. On January 17, 2024, the court heard testimony in the matter and argument from the Defense and State. The court then requested the parties to provide briefs in the matter by February 2, 2024. On February 2, 2024, both the State and Defense filed their memoranda. The court has reviewed the parties' respective memoranda, the transcript of the January 17, 2024 motions hearing, body camera footage, the facts, and the law, and accordingly renders the following findings and ruling:
>
> > This court finds that Mr. Green's statements were obtained in violation of his constitutional rights, such that the statements and evidence must be suppressed. Furthermore, this court makes a finding of no probable cause.
> >
> > In accordance with Louisiana Code of Civil Procedure [sic], "the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of providing [sic] the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant." During a *Terry* stop, an "[o]fficer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." However, when the questioning rises to the level of a "custodial interrogation," *Miranda* protects any statements the suspect makes. A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."
> >
> > First, Mr. Green was detained when officers stopped him outside of the apartment building, informed him that he matched the description of a person reported to be selling drugs, and asked him incriminating questions about whether he was armed. Therefore, a reasonable person "would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest." Because these custodial questions

4

occurred before Mr. Green was *Mirandized*, the statements are inadmissible. Furthermore, the evidence is inadmissible as fruit of the poisonous tree.

**Second, without the statements and evidence unconstitutionally obtained from Mr. Green, this court makes a finding of no probable cause**. (Emphasis added).

Accordingly, this court finds no probable cause and that the Defense Motion to Suppress is **GRANTED**.

(Footnotes omitted).

## DISCUSSION

As an initial matter, the State maintains only that the court erred by excluding the evidence seized[1] and in finding no probable cause and does not contest the portion of the court's ruling excluding Defendant's statements. However, the majority opinion makes an issue of the State's acquiescence in the suppression of the statements; thus, a review of the constitutionally of the statements will be discussed below.

When reviewing trial court decisions on motions to suppress, the trial court's determinations of fact are reviewed for abuse of great discretion, and legal decisions are reviewed *de novo*. *State v. Candebat*, 13-0780, pp. 6-7 (La. App. 4

---

[1] In its application, the State described the evidence as follows:

1. a black taurus 740 slim, 40 caliber semi-automatic pistol/magazine containing 5 live rounds and possessing an obliterated serial number on both slide and frame of the pistol found in defendant's waistband, unsecured and wholly concealed;
2. a black fanny pack found on defendant's person that was searched after defendant was arrested for a firearm violation, which contained items 3-6 below;
3. marijuana weighing in at approximately 82.50 grams total packaged in:
   a. a clear plastic bag containing 4 smaller clear bags containing loose marijuana packaged for retail distribution;
   b. 2 large baseball sized bags of loose marijuana;
   c. another smaller clear bag containing additional loose marijuana;
4. a blue pressed pill with markings indicating it was a Xanax pill;
5. a plastic digital scale with marijuana residue; and
6. $168.25 in cash made up of:
   a. six twenty-dollar bills;
   b. one ten-dollar bill;
   c. three five-dollar bills; and
   d. twenty-two one-dollar bills.

Cir. (1/30/14), 133 So.3d 304, 308 (citing *State v. Wells*, 08-2262, p. 4 (La. 7/6/10), 45 So.3d 577, 580). At a hearing on a motion to suppress, the burden is on the State to prove the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); *State v. Ulmer*, 12-0949, p. 5 (La. App. 4 Cir. 5/29/13), 116 So.3d 1004, 1007.

The United States and Louisiana Constitutions recognize the rights of persons to be secure in their person, property, and effects, and to be free from unreasonable searches and seizures. U.S. Const. amend. IV; La. Const. art. 1, §5. Reasonableness dictates the balance between legitimate law enforcement concerns and an individual's protected privacy interests. *State v. McClendon*, 13-1454, p. 4 (La. App. 4 Cir. 1/30/14), 133 So.3d 239, 244. A search or seizure conducted without a warrant is *per se* unreasonable unless it can be justified by one of the narrowly drawn exceptions to the warrant requirement. *State v. Surtain*, 09-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043. A "reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights." *State v. Guillot*, 12-0726, p. 4 (La. App. 4 Cir. 4/17/13), 115 So.3d 624, 628.

La. C.Cr.P. art. 215.1 provides, in pertinent part, as follows:

> A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.

*See also Surtain*, 09-1835, p. 8, 31 So.3d at 1044 (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)) ("a law enforcement officer, who reasonably concludes in light of his experience that criminal activity may be occurring, or may have occurred, may briefly stop a suspicious person and make reasonable inquiries for the purpose of confirming or dispelling his suspicions.").

The reasonable suspicion standard required for an investigatory stop "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). *See also United States v. Montoya de Hernandez*, 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 3310, 3312, 87 L.Ed.2d 381 (1985) (the reasonable suspicion standard required for an investigatory stop is less demanding than probable cause required to justify an arrest).

> In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails and consider the totality of the circumstances in determining whether reasonable suspicion exists. The detaining officers must have knowledge of specific articulable facts, which, if taken together with rational inferences from those facts, warrant the stop.

*State v. Marzett*, 09-1080, pp. 5-6 (La. App. 4 Cir. 6/9/10), 40 So.3d 1204, 1208 (quotation omitted).

In *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the United States Supreme Court held that an anonymous tip, which included only a description of someone who would be at a certain place and had a gun, did not provide reasonable suspicion to detain the defendant because it provided no predictive information. The *J.L.* Court stated: "Knowledge about a person's future movements indicates some familiarity with that person's affairs. . ." 529 U.S. at 271, 120 S.Ct. at 1379. Because there was no predictive information as to the suspect's movements, the anonymous tip alone, without any observation of any criminal activity by the officers themselves, did not give them reasonable suspicion to stop the defendant. *Id.*

However, in *State v. Boyles*, 14-1126 (La. App. 4 Cir. 2/4/15), 157 So.3d 1170, this Court was presented with a case somewhat similar to the instant one. In *Boyles*, the evidence precipitating the stop was described as follows:

7

Officer Kelli Dunaway testified that she arrested the appellant on September 3, 2013 at the main branch of the public library. She had received a dispatch concerning a suspect who had argued with a woman and pulled a gun at a nearby Walgreens, and the suspect was described as wearing a pink shirt and black pants and carrying a gun. Officer Dunaway spotted the appellant, who was wearing a pink shirt and dark pants, which she indicated fit the description given by dispatch. She called for backup, and when another officer arrived, the other officer frisked the appellant and found a gun. She denied that the appellant made any statements.

On cross-examination, Officer Dunaway testified that although the altercation with the woman occurred sometime in the morning, she did not encounter the appellant until approximately 1:30 p.m. She did not know who reported the altercation; she merely heard the description given by dispatch and then spotted the appellant. She stated that she saw him walk into the public library, which she estimated was six to seven blocks from the Walgreens where the altercation occurred. The officers stopped and frisked the appellant inside the library.

*Id.*, 14-1126, p. 2, 157 So.3d at 1172.

In *Boyles*, this Court distinguished the cases requiring predictive information and corroboration of criminal behavior by the police stating:

The cases cited by the appellant are distinguishable from the instant case in that those cases involved "anonymous" tips that led the police to stop the defendants. Here, although the appellant tries to equate the dispatch with an anonymous tip, Officer Dunaway testified that the description was broadcast over dispatch based upon the earlier assault at the drugstore hours earlier and several blocks away from the library where she observed the appellant. While Officer Dunaway could not say who actually gave the description to dispatch, it appears that the description was the result of the investigation of the incident, not part of an anonymous tip. Thus, the description was much more reliable than that of an anonymous tip, requiring less corroboration than an anonymous tip required.

Officer Dunaway observed a person matching the description of a man who waved a gun at a woman hours earlier and six to seven blocks away from where she saw the appellant. The court noted that these circumstances gave Officer Dunaway, and by extension the backup officer, reasonable suspicion to stop him, and in fact mandated that they investigate the appellant for the

8

> public's safety to determine if he was carrying a dangerous weapon. Given the relative nearness of the time and vicinity of the crime to where the officers detained him, we conclude that the trial court did not err in its finding of reasonable suspicion to detain the appellant.

*Id.*, 14-1126, pp. 8-9, 157 So.3d at 1175-76.

## 1. Legality of the Stop and Detainment of Defendant

I find that the stop of Defendant was justified under the *Terry v. Ohio* standard and La. C.Cr.P. art. 215.1(A), which allow police to stop and briefly detain a person based on reasonable suspicion of criminal activity.

When McFarlane stopped Defendant, as corroborated by the video, he immediately admitted being armed. The bodycam video further reflects McFarlane informing Defendant that when he "walked out [McFarlane] could see the bulge in [Defendant's] waistband." Upon the officer's recovery of the weapon and Defendant's admission that he did not possess a concealed carry permit, the police possessed probable cause to arrest Defendant and the ensuing evidence seized was legally obtained as incident to an arrest based on probable cause. Contrary to the district court's suggestion, nothing about the encounter suggests that Defendant was subject to a custodial interrogation when he admitted possession of the (concealed) firearm such that *Miranda* warnings were required.[2]

The police had a description of a suspect allegedly selling narcotics and possibly armed. Upon arrival, Defendant matched this description, which provided sufficient reasonable suspicion to justify the initial stop. Further, the police observed "a distinct L-shaped bulge" in Defendant's front waistband area, which they believed to be a firearm. This provided police with reasonable suspicion to conduct a protective search for weapons. *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881 ("When an officer is justified in believing that the individual whose suspicious

---

[2] *See* discussion under "Obligation to Issue *Miranda* Warnings" below, pages 11-12, *infra*.

behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon."); La. C.Cr.P. art. 215.1(B) ("When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.). *See also State v. Jackson,* 452 So.2d 776, 778 (La. App. 4th Cir. 1984)(holding that the defendant was subject to legal stop and frisk when officers believed they saw the imprint of a gun in the defendant's right rear pocket).

At the time of the investigatory stop, the State demonstrated that McFarlane possessed knowledge of specific articulable facts reflecting Defendant possessed a concealed weapon. Specifically, the officer testified that he had responded to a dispatch reflecting that a possibly-armed individual was conducting illegal narcotics sales in the apartment complex. When the officer entered the complex, he immediately encountered Defendant who matched the description provided. Most importantly, the officer testified that he personally observed "a distinct L-shaped bulge in [Defendant's] front waistband area," which he "believed to be a firearm." A review of bodycam video corroborates McFarlane's testimony inasmuch as it depicts Defendant, who matched the description provided by the dispatch. In this scenario, McFarlane certainly possessed reasonable suspicion to conduct the stop if not probable cause to arrest Defendant for illegal possession of a concealed weapon.

## 2. Arrest and Search of Defendant

Illegal carrying of a weapon is defined, in part, as "[t]he intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one's person." La. R.S. 14:95(A)(1).

10

The "elements of illegal carrying of a weapon are: (1) intentional concealment; (2) of a firearm; (3) on one's person." *State v. Powe*, 14-0137, p. 4 (La. App. 4 Cir. 7/16/14), 145 So.3d 583, 586 (citing *State v. Maxwell*, 11-0564, p. 27 (La. App. 4 Cir. 12/21/11), 83 So.3d 113, 130). Defendant's admission that he had a gun on his person and did not have a concealed carry permit with him provided probable cause for arrest for illegal carrying of a weapon. *See State v. Woods*, 406 So.2d 158, 159 (La. 1981) (holding that the discovery of a concealed handgun during a valid investigative stop established sufficient probable cause to arrest the defendant for illegally carrying a concealed weapon, and justified the "ensuing search incident to the lawful full custody arrest" which "produced the illegal drugs.").

Following the arrest, the search of Defendant which led to the discovery of the weapon and illegal narcotics was justified as a search incident to arrest. Police are allowed to search an arrested person and the area within his immediate control to prevent the concealment or destruction of evidence and to ensure officer safety. *Riley v. California*, 573 U.S. 373, 382-83, 134 S.Ct. 2473, 2483, 189 L.Ed.2d 430 (2014)(citing *Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). Since the arrest was based on probable cause and the search that uncovered the weapon and drugs was incident to that lawful arrest, the evidence should not be suppressed. The search was justified independently of any need to issue *Miranda warnings* because it occurred immediately following a lawful arrest.

**3. Obligation to Issue *Miranda* Warnings**

The obligation to provide *Miranda* warnings attaches only when a person is questioned by law enforcement after he has been taken "into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *State v. Payne*, 01-3196, p. 7 (La. 12/4/02), 833 So.2d 927, 934. Custody is decided by two distinct

11

inquiries: an objective assessment of the circumstances surrounding the interrogation to determine whether there is a formal arrest or restraint on freedom of the degree associated with formal arrest; and, second, an evaluation of how a reasonable person in the position of the interviewee would gauge the breadth of his freedom of action. *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994). As such, *Miranda* warnings are not required when officers conduct preliminary, non-custodial, on-the-scene questioning to determine whether a crime has been committed, unless the accused is subjected to arrest or a significant restraint short of formal arrest. *State v. Davis*, 448 So.2d 645, 651-52 (La. 1984). "Thus[,] an individual's responses to on-the-scene and non-custodial questioning, particularly when carried out in public, are admissible without *Miranda* warnings." *State v. Manning*, 03-1982, p. 24 (La. 10/19/04), 885 So.2d 1044, 1073.

In the case *sub judice*, the police did not subject Defendant to custodial interrogation or its equivalent when they briefly questioned him on the scene about having a gun and a concealed carry permit. The police did not place Defendant under formal arrest, nor did they subject him to the restraint associated with a formal arrest, before asking him these questions. Because Defendant was not in custody during this questioning, the police were not obliged to provide *Miranda* warnings. *See State v. Goddard*, 501 P.3d 1188, 1202-04 (Utah Ct. App. 2021) (holding that the defendant was not in custody when asked whether he was armed and whether he had concealed weapon permit during a *Terry* stop, and thus was not entitled to *Miranda* warnings); *United States v. Denson*, No. 06-75, 2006 WL 3144857, at *5 (W.D. Pa. Oct. 31, 2006) (holding that the defendant was not in custody when asked whether he a license to carry a firearm during a *Terry* stop, and thus was not entitled to *Miranda* warnings); *United States v. Hogan*, 684 F.

App'x 904, 908 (11th Cir. 2017) (defendant not in custody when officer asked whether he had a weapon during a traffic stop).

## 4. Suppression of the Physical Evidence and Statement

Since the arrest was based on probable cause and the search that uncovered the weapon and drugs was incident to that lawful arrest, the evidence should not be suppressed. The search was justified independently of any need to *Mirandize* because it occurred immediately following a lawful arrest. In any event, the failure to give a suspect the warnings prescribed by *Miranda* does not warrant suppression of the physical fruits of a suspect's unwarned but voluntary (uncoerced) statement. *United States v. Patane*, 542 U.S. 630, 642, 124 S.Ct. 2620, 2629, 159 L.Ed.2d 667 (2004); *State v. John*, 13-195, p. 6 (La. App. 5 Cir. 7/9/13), 123 So.3d 196, 202. Accordingly, if even if the police questioning of Defendant as to his possession of a gun and carry permit violated *Miranda*, thereby requiring the suppression of his statement, suppression of the physical fruits of his statement would not be required.

The statement that he was armed and did not have a permit was made in response to a query about whether Defendant was armed, which is a question of immediate concern for officer safety during a *Terry* stop. Given that this statement was made before Defendant was formally in custody and *Mirandized*, and in response to a situation where the officers had a legitimate reason to ask for safety purposes, a suppression of the statement is not warranted.

I opine that both the statement and physical evidence were legally obtained. The statement was made in direct response to a question during a lawful *Terry* stop, and the evidence was found during a lawful search incident to arrest. The subsequent *Mirandization* primarily impacts any statements or admissions made after Defendant was in custody and had been read his rights. Thus, the initial statement and the evidence found should not be suppressed.

13

The majority seems to argue that because the State did not object to the suppression of the statements then that makes the suppression of the physical evidence proper:

> The State seeks to have the trial court's ruling partially reversed. Specifically, the State contends the trial court erred by suppressing the evidence seized and finding no probable cause. The State does not seek review of the trial court's suppression of Mr. Green's statements, as "the State believes the trial court reached the correct result and sees no reason to seek review of that portion of the ruling."
>
> *        *        *        *
>
> Upon review, we find no merit to the State's contention that even though the statements were correctly suppressed, the evidence was legally seized. The trial court held that once NOPD officers stopped Mr. Green and informed him that he matched the description of a subject suspected of dealing drugs and being armed, Mr. Green should have been Mirandized. The State seems to concede this point, as it did not seek review of the suppression of Mr. Green's statements. Everything occurring after this moment was tainted.

Besides the fact that the statement is not subject suppression in my view, the State "has great prosecutorial discretion in forming trial strategies" and may acquiesce in the suppression the statement made by Defendant while not agreeing to suppress the weapon and drugs found during the search. *State v. Mitchell*, 24-0159 (La. App. 4 Cir. 3/22/24), --- So.3d ----, ----, 2024 WL 1229830, *3 (Lobrano, J., concurring), *writ denied*, 24-00378 (La. 3/28/24). If there is any question or ambiguity about the timing and adequacy of the *Miranda* warnings, the prosecution might agree to suppress statements made by Defendant to avoid complicating the case. By conceding on the suppression of the statements, the State maintains the integrity of the remaining evidence and avoids potential issues of appeal.

The weapon and drugs found during the search, obtained through a lawful *Terry* stop and search incident to arrest, provide concrete, physical evidence of

14

criminal activity. Physical evidence is most compelling. The State can decide to focus on this stronger, more objective evidence in building their case, especially since the legality of the search and seizure can be clearly justified independently of Defendant's statements. Because the present record does not reflect that any evidence seized was derivative of an illegal stop or a custodial interrogation conducted in the absence of *Miranda* warnings, the State's application, in which it alleges that the court erred when it suppressed the evidence, has merit. I would grant the State's writ and reverse the district court's ruling suppressing the evidence.